334 So.2d 129 (1976)
HEFTLER CONSTRUCTION CO. AND SUBSIDIARIES, Petitioner,
v.
DEPARTMENT OF REVENUE of the State of Florida, Respondent.
No. 76-72.
District Court of Appeal of Florida, Third District.
June 22, 1976.
Williams, Salomon, Kanner & Damian, Miami, for petitioner.
Robert L. Shevin, Atty. Gen., and E. Wilson Crump, II, Asst. Atty. Gen., J. Ed Straughn, Winter Haven, for respondent.
Before BARKDULL, C.J., and HAVERFIELD, J., and CHARLES CARROLL (Ret.), Associate Judge.
BARKDULL, Chief Judge.
Pursuant to the new Administrative Procedures Act, Ch. 120, Fla. Stat., the petitioner seeks review of an order of the respondent which disallowed losses from the petitioner's Puerto Rico subsidiaries to be included on its Florida corporation income tax return, made an apportionment of certain expenses attributable to its Puerto Rico property, and billing the petitioner for a tax deficiency. The order approved by the Governor and the Cabinet, sitting as *130 the head of the Department of Revenue, reads in part as follows:
* * * * * *
"INTRODUCTION
"At the beginning of the hearing, the parties stipulated that there were no material issues of fact in dispute and that the relevant facts were as set forth in the pleadings. The hearing was thus confined to the parties' legal arguments regarding the interpretation of certain statutes relating to the primary issue of the validity of the proposed deficiency in petitioners' Florida income taxes for the fiscal years ending July 31, 1972, and July 31, 1975. In determining this issue, three further issues present themselves for decision:
"A. Do profits or losses derived by a corporate income taxpayer from operations in Puerto Rico come within the foreign source income exclusion of F.S. § 220.13(1)(b)2.b.?
"B. If so, is the foreign source income adjustment of § 220.13 applicable to an affiliated group filing a consolidated return under F.S. § 220.131?
"C. Are property, payroll and sales of a taxpayer's Puerto Rican operations to be excluded from the demoninator [sic] in its apportionment formula?
"It is the petitioners' contention that income or losses from operations within Puerto Rico do not fall within the foreign source income adjustment of F.S. § 220.13. In that alternative, even if they did, petitioners contend that such adjustments required by § 220.13 are not applicable to an affiliated group of corporations filing a consolidated return under § 220.131, which mandates the use of federal taxable income.
"It is the respondent's contention that the adjustments required by § 220.13 are applicable to an affiliated group of corporations filing a consolidated return under § 220.131 and that losses derived from Puerto Rican operations are not includable in adjusted federal taxable income for Florida purposes.
"FINDINGS OF FACT
"Having considered the pleadings, evidence and legal arguments presented in this cause, the following facts are found:
"1. Petitioner is a corporation duly organized under the laws of the State of New Jersey and qualified to do business in the State of Florida.
"2. Two of the subsidiaries of Petitioner are Island Properties, Inc., formerly known as Heftler International, Inc., and Island Land Corporation, formerly known as Heftler Construction Company of Puerto Rico, Inc. These corporations are organized under the laws of the State of Florida and the State of New Jersey respectively and maintain principal places of business in Puerto Rico.
"3. For the fiscal years ending July 31, 1972 and July 31, 1973, petitioners properly included losses from the operations of the Puerto Rico corporations in their consolidated income tax returns filed with the Internal Revenue Service.
"4. For the fiscal years ending July 31, 1972, and July 31, 1973, petitioners timely filed with the respondent consolidated income tax returns including therein the operations of the Puerto Rico corporations.
"5. After a timely audit, the respondent excluded, for the purposes of computing adjusted federal income as defined by § 220.13, the losses sustained by the Puerto Rico corporations. The respondent also excluded from the computation of the apportionment factors defined in F.S. § 214.71 and 220.15 the value of the property, payroll and sales utilized in the operations of the Puerto *131 Rico corporations. The respondent cited F.S. §§ 220.13(1)(b)2.b, 220.15(3) and 214.71 as its authority.
"6. The adjustments made by the respondent results in a net proposed deficiency of $75,076.46 for the two fiscal years in question.
"7. After attempts by the parties to resolve the issues by informal means failed, the petitioner requested a formal hearing and the respondent requested the Division of Administrative Hearings to conduct the hearing.
"CONCLUSIONS OF LAW
"The Florida income tax code imposes upon corporations an excise or privilege tax measured by net income. F.S. § 220.11(2). Florida net income is defined as `adjusted federal income', apportioned where necessary in accordance with F.S. § 220.15, less the annual exemption allowed by § 220.14. F.S. § 220.12(1). Thus, `adjusted federal income' is the beginning point for computing tax liability under the Florida Code.
"There are two sections of Ch. 220 pertaining to adjusted federal income. The first is § 220.13 which defines it as federal taxable income, subject to certain limitations on loss and expense carryovers, adjusted in accordance with specified additions and subtractions. The second is § 220.131 which allows an affiliated group of corporations to file a consolidated return. This latter section provides that
`The computation of consolidated taxable income . .. shall be made in the same manner and under the same procedures ... as are required for consolidating the incomes of affiliated corporations for the taxable year for federal income tax purposes ..., and the amount shown as consolidated taxable income shall be the amount subject to tax under this Code.'
F.S. § 220.131(4).
Based upon this language, it is petitioners' contention, inter alia, that the adjusted federal income definition of § 220.13 is not applicable to affiliated groups filing consolidated returns, whose tax for Florida purposes would be identical to the federal tax. A reading and consideration of these two statutes leads the undersigned to conclude that petitioners' contention in this regard is without merit.
"First, there would appear to be no rational reason why the adjustments prescribed by F.S. § 220.13 (which defines `adjusted federal income' for the purposes of determining a taxpayer's net income) would be applicable to one corporation, but would not be applicable to two or more corporations filing as an affiliated group. Second, it must be remembered that the tax imposed by Ch. 220 is a tax measured by net income. Net income is defined in terms of adjusted federal income. The opening sentence of § 220.13, defining adjusted federal income, provides that it means an `amount equal to the taxpayer's taxable income ... or said taxable income of more than one taxpayer as provided in § 220.131, adjusted...' by certain additions and subtractions. (Emphasis supplied). It thus seems clear that although a Florida parent may file a consolidated Florida return with its in-state affiliates and a Florida parent and all of its federal corporate affiliates may elect under certain conditions to file their federal consolidated return in Florida, the net income subject to the Florida income tax is the adjusted federal income as defined by § 220.13. Also see F.A.C. Rule 12C-1.131(4)(c), which provides that
`The limitations described in Section 220.13(1)(b) in respect to net capital losses and excess contributions deductions shall be taken into account in the computation of consolidated items.'

*132 "This then brings us to the issue of whether profits or losses derived from operations in Puerto Rico come within what is known as the foreign source income exclusion or subtraction of § 220.13(1)(b)2.b. That section provides that there shall be subtracted from taxable income any amount included therein which was derived from sales outside of the United States, and from sources outside the United States as interest, as a royalty or as compensation for technical or other services. While the Florida corporate income tax code does not define the term `United States', the legislative history and a reading of other statutes and rules and regulations leads to the conclusion that the legislature intended the term `United States' to mean only the fifty states and the District of Columbia.
"Construction of a statute by the administrative agency charged with its enforcement and interpretation is entitled to great weight. State v. Florida Development Commission, 211 So.2d 8 (Fla. 1968); Gay v. Canada Dry Bottling Co., 59 So.2d 788 (Fla. 1952); Commissioner v. South Texas Lumber Company, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948). The administrative interpretation of the foreign source exclusion is set forth in F.A.C. Rule 12C-1.13(1)(b)2, which states
`... income derived from sources within a possession or territory of the United States shall be treated as income derived from sources outside the United States.'
"There is a further consideration, which also goes to the third issue raised in this proceeding  whether the property, payroll and sales of the Puerto Rican operations are excludable from the demoninator [sic] of the taxpayer's apportionment formula. According to F.S. § 220.15, adjusted federal income is to be apportioned to Florida in accordance with Part IV of F.S. Ch. 214, specifically § 214.71. The apportionment factors of § 214.71 are partially defined by § 220.15. As originally promulgated, § 220.15(3) defined `everywhere' for purpose of computing the demoninator [sic] of the apportionment factor, to mean
`in all other states of the United States, the District of Columbia, the commonwealth of Puerto Rico, any territory or possession of the United States, or any political subdivision of the foregoing.' Laws of Florida 1971, Ch. 71-984.
That section was amended by Ch. 72-278, § 5, Laws of Florida 1972, by deleting references to Puerto Rico and any territory or possession of the United States. Thus, `everywhere' is now defined to mean `in all states of the United States, the District of Columbia, or any political subdivision of the foregoing'. F.S. § 220.15(3). This amendment clearly illustrates the legislative intent to exclude Puerto Rican sales, property and payroll from the demoninator [sic] in the apportionment formula. If Puerto Rican income and operations were to be taxed by Florida, it would have been necessary to include these elements in the apportionment formula. Having excluded these elements, it seems clear that the Florida Legislature considered Puerto Rican income and losses as foreign source income and losses to be subtracted from adjusted federal income.
"In conclusion, it is my interpretation of the statutes in question that affiliated groups are subject to the adjustments to taxable income prescribed by F.S. § 220.13; that profit or losses derived from operations in Puerto Rico come within the foreign source exclusion or subtraction of F.S. 220.13(1)(b)2.b.; and that property, payroll and sales from Puerto Rican operations are to be excluded from the demoninator [sic] of corporations apportioning their income between Florida and other jurisdictions.

*133 "RECOMMENDATION
"Based upon the above findings of fact and conclusions of law, it is recommended that there is no basis for affording petitioners any relief from the proposed deficiency and that said deficiency in the amount of $75,076.46 be sustained." [Emphases supplied]
* * * * * *
We sustain the action of the Department and the order it approved, which correctly reviews the legislative history and intent of the legislature in the enactment of Ch. 220, Fla. Stat. If there was any doubt about the original intent of the legislature to exclude foreign source income adjustment, this was clarified by the 1972 amendment to § 214.71, Fla. Stat., and was further clarified by the author of Ch. 220, the Honorable Arthur J. England, Jr. now Justice of the Supreme Court of Florida, found in his article entitled: Corporate Income Taxation in Florida: Background, Scope, and Analysis, which is found in a special works Compiled and Edited by the Editorial Staff of the Florida State Law Review, 1972, entitled: An Introduction to Florida Corporation Income Taxation.[1]
There are many varied reasons why the Legislature of the State of Florida would exempt foreign sources from Florida income tax liability. This case is a good example of why foreign source income should be treated different from that earned in a sister state, because in the instant matter the affiliated foreign corporations operated at a loss and, by filing a consolidated tax return, the domestic United States corporation reduces its tax liability. But the contrary is not true. If the foreign affiliated corporations operate at a profit, then there is no filing of a consolidated tax return and the earnings of the foreign subsidiary are not subject to Federal income tax. See: § 931, Internal Revenue Code of 1954. This may be a public policy established by the United States Congress to encourage American corporations to invest in Puerto Rico, but the Legislature of the State of Florida had a right and did elect not to make this a part of the public policy of the State of Florida. The United States Congress elected to subsidize Puerto Rican business by such Federal laws; the Florida Legislature declined to do the same.
Therefore, for the reasons above stated, we hold that foreign source income tax adjustment is not permitted in computing the income tax due the State of Florida and, further, that the Department of Revenue acted correctly in utilizing the tax apportionment *134 formula which excluded property, payroll, and sales of Puerto Rican subsidiaries in determining the tax base.
Affirmed.
CHARLES CARROLL, Associate Judge, dissents.
NOTES
[1] Said article reads in part as follows:

* * * * * *
"5. Foreign Source Income.  Income derived for foreign (non-United States) sources was never seriously considered by the legislature to be an appropriate subject for Florida taxation. The draft statutes circulated before the November referendum had raised the possibility of taxing this type of income, but a great outpouring of opposition emanated from areas in south Florida, principally Coral Gables, where there are headquartered export companies doing a substantial business in Latin America, the Carribean, and other western hemisphere countries. Additionally, several national oil companies urged the legislature to consider the technical difficulties of adjusting the Florida tax base to take into account the foreign tax credit provisions of federal law. It was shown that vast inequities among competing corporations with different corporate structures, but with similar levels of business activity in Florida, would result unless the Florida code provided something akin to the federal tax credit for foreign source income. A state tax credit did not seem feasible, however.
"As finally adopted, the Florida Code eliminates from the tax base all income derived from foreign sources. To prevent erosion of the tax base where domestic as well as foreign source income is earned, the apportionment fractions for sales, property, and payroll were adjusted to eliminate foreign property from the denominator of each fraction."
* * * * * *