461 So.2d 959 (1984)
SHELL OIL COMPANY, Appellant,
v.
Department of Revenue, Appellee.
No. AS-159.
District Court of Appeal of Florida, First District.
April 3, 1984.
Rehearing Denied November 6, 1984.
*960 Robert B. Glenn, Jr., of Glenn, Rasmussen, Fogarty & Merryday, Tampa, Elizabeth C. Burton, Houston, Tex., for appellant.
Jim Smith, Atty. Gen., Thomas L. Barnhart, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Shell appeals from the trial court's final summary judgment holding, among other things, that the Department's treatment of Shell's income derived from the sale in the United States of oil from wells located on the outer continental shelf during the years from 1972 to 1975 does not violate the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333(a)(2)A. The Department cross-appeals the trial court's finding that Shell may include all of the original costs" of its oil and gas wells, in particular its intangible drilling and development costs, in the property factor of the apportionment formula for determining its Florida corporate taxes, Section 214.71, Florida Statutes (1972). We affirm the final summary judgment in its entirety.
Shell's primary issue is apparently one of first impression in this state and elsewhere, namely, whether 43 U.S.C. § 1333 (a)(2)A,[1] infra, prohibits Florida from taxing its income from the sale in the United States of oil extracted from its outer continental shelf wells. We reject Shell's position that it does, for all of the oil from these wells was brought into the United States, refined in the United States, and then sold in the United States. Florida is thus assessing corporate income taxes on income derived from sales occurring in the United States, so the significant event for purposes of that tax is the sale of the oil, not the removal of the oil from the outer continental shelf. Taking Shell's argument to its logical conclusion, a state could not impose any tax, such as a sales tax, for any product it derives from its outer continental shelf wells. We cannot agree that an interpretation having such sweeping consequences was ever intended by the Congress, and we therefore reject it.
As a corollary argument Shell contends that Section 220.02(5), Florida Statutes,[2] requires the complete exclusion of income derived from outer continental shelf oil because including that income would cause a *961 conflict with a federal statute, in this case the OCSLA. We view this contention as nothing more than a restatement of Shell's first issue discussed above and therefore reject it.
Shell also argues that there should be a direct correlation between the income subject to the Florida corporate tax and the property, payroll and sales included in the apportionment formula, citing Heftler Construction v. Department of Revenue, 334 So.2d 129 (Fla. 3rd DCA 1976). Before analyzing this issue, however, a brief description of Florida's method of apportioning corporate taxes may be useful.
The income of a business, such as Shell, operating both within and without Florida, is apportioned to Florida in accordance with a three-factor formula. While the normal three-factor formula is the arithmetic average of three factors, a corporation's property, payroll, and sales, Florida's formula is double-weighted in favor of the sales factor. Each apportionment factor is therefore the ratio of Florida business activity (property, payroll, and sales) to "everywhere" business activity (property, payroll, and sales). Sections 214.71, and 220.15, Florida Statutes. "Everywhere" means "in all states of the United States, the District of Columbia, or any political subdivision of the foregoing." Section 220.15(3), Florida Statutes.
Shell excluded its outer continental shelf income from income apportionable to Florida by subtracting from its adjusted federal taxable income the wellhead fair market value of the oil recovered at its outer continental shelf drilling installations, less related expenses. It also excluded outer continental shelf real and tangible personal property from the denominator of the property factor, outer continental shelf payroll from the denominator of the payroll factor, and outer continental shelf sales from the denominator of the sales factor of the apportionment formula. It now urges, as it did before the trial court, that this process is justified by the Heftler decision. Shell further argues that the Department's inclusion of sales of oil derived from the outer continental shelf wells in the denominator of the sales factor is inconsistent with its exclusion of outer continental shelf property and payroll from the denominators of the property and payroll factors.
Addressing the latter contention first, we find that the Department properly computed Shell's sales, property, and payroll "everywhere" in the denominators of the sales, property, and payroll factors. "Everywhere" is defined by Section 220.15(3) to include "all states of the United States, the District of Columbia, or any political subdivision of the foregoing." The outer continental shelf, however, is not a state of the United States, the District of Columbia, or a political division thereof. Rather, it is a part of the United States, 43 U.S.C. § 1332 (a), Internal Revenue Code, § 638, so while the sales in the United States of oil derived from outer continental shelf wells occurred in the various states of the United States defined as "everywhere," outer continental shelf property and payroll do not come within the parameters of "everywhere," Section 220.15(3), and thus cannot be included in the denominators of the property and payroll factors.
We likewise reject Shell's contention that Heftler mandates a direct correlation between the income subject to tax in Florida and the property, payroll, and sales included in the apportionment formula. Simply stated, the profits and losses involved in Heftler were earned in Puerto Rico and were therefore considered foreign, while the income in Shell's case was realized totally from sales of oil in the various states of the United States.
We also must reject the Department's argument on cross-appeal to the effect that Shell should not be allowed to include drilling and development costs in the property factor in the apportionment formula. Property, both real and tangible, is to be valued at original cost, Section 214.71(1), and the Department has defined "original cost" as follows:
As a general rule "original cost" is deemed to be the basis of the property *962 for federal income tax purposes (prior to any federal adjustments) at the time of acquisition by the taxpayer and adjusted by subsequent capital additions or improvements thereto and partial disposition thereof, by reason of sale, exchange or abandonment, etc.
Florida Administrative Code Rule 12C-1.15(4)(b)5. Relying on this rule, the Department urges that Shell's intangible drilling and development expenditures have no recognizable cost or other basis sufficient to permit the inclusion of those costs in the property factor because they have been deducted by Shell for federal income tax purposes in accordance with Section 263(c) of the Internal Revenue Code. We note that when Shell did so, according to the federal rule, it also forfeited any right to include these costs in the federal tax basis of the property. However, while the Internal Revenue Code may so treat these costs, there is nothing in Rule 12C-1.15(4)(b)5 that mandates how these capital additions for improvements are to be treated, for Florida tax purposes, because of a taxpayer's election, as permitted under Section 263(c) of the Internal Revenue Code, to either deduct these intangible drilling costs from his gross income or to capitalize those costs in following years. Since Shell's capitalization of these costs is permissible "for federal income tax purposes," Shell's procedure conforms to the Department's rule.
AFFIRMED.
WENTWORTH and JOANOS, JJ., concur.

ON MOTION FOR REHEARING
Shell petitions this court for rehearing; the Department on cross-appeal petitions for rehearing and/or clarification. We find that Shell's petition fails to convince us that our original opinion misconstrued or misapplied the law or the facts involved in Shell's points on appeal. Accordingly, Shell's petition for rehearing is denied.
We also deny cross-appellant Department of Revenue's motion for rehearing and clarification. The motion is directed to that portion of our decision affirming the trial court's final summary judgment prohibiting the department from excluding Shell's intangible drilling and development costs (IDC's) from Shell's property factor in the department's apportionment formula.
The department now urges that this court overlooked Section 220.42(1), Florida Statutes. That section provides, in pertinent part:
(1) For purposes of this code, a taxpayer's method of accounting shall be the same as such taxpayer's method of accounting for federal income tax purposes... . (e.s.)
This provision, the department argues, precludes Shell from classifying IDC's as expenses in its federal income tax returns (thus effecting a reduction in taxable income for the year in which the expenditures are made), while at the same time classifying them as capital assets (treated as a part of the cost of acquisition of the oil well), for Florida income tax purposes. Shell's unrefuted affidavits established that Shell, for years, has maintained corporate financial records treating these IDC's as capital assets, thus properly treatable, under Shell's view, as a part of the "original cost" as this terminology is used in Rule 12C-1.15(4)(b)5, Florida Administrative Code, both in the numerator and denominator of the apportionment formula.
There is merit in the department's position that the statute (Section 220.42(1)) would indicate that IDC's should be treated the same in the apportionment formula as in Shell's federal income tax returns. We may speculate that had this statute been urged in the court below, in support of the department's interpretation of its rule, the trial judge's decision might well have been favorable to the department on this issue. However, so far as we have been able to determine from the record, the statute was never mentioned below. Neither was the statute cited in the department's brief in this court, nor in oral argument. Furthermore, the issue as presented in this court, as framed by the department, was "[W]hether the definition of `original cost' *963 provided in Rule 12C-1.15(4)(b)5, F.A.C., is a valid exercise of delegated legislative authority." We find that the rule itself contains no reference to Section 220.42(1), although under the rule-making provisions, Section 120.54(7), Florida Statutes, each rule is required to contain a reference to "the section or subsection of the Florida Statutes or Laws of Florida being implemented, interpreted, or made specific." The basic issue in this case, as indicated in our original opinion, was whether the procedure followed by Shell conformed to the rule, or was prohibited by it. The trial court, after consideration of the pleadings and the evidence produced on Shell's motion for summary judgment, determined this issue in favor of the taxpayer. This court affirmed that ruling, which we find to be consistent with the rule governing construction of taxing enactments in favor of the taxpayer. See, Department of Revenue v. Brookwood Associates, Ltd., 324 So.2d 184 (Fla. 1st DCA 1975); Harris Corporation v. Department of Revenue, 409 So.2d 91, 93 (Fla. 1st DCA 1982) (Ervin, J. specially concurring).
Our disposition of the department's motion for rehearing is mandated by the rule that authorities not cited and issues not raised in the brief or on oral argument cannot be raised for the first time on motion for rehearing. Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977); Cartee v. Florida Department of Health and Rehabilitative Services, 354 So.2d 81 (Fla. 1st DCA 1977). The department's motion for rehearing is therefore denied.
One final matter requires our attention. Shell has requested that we certify the question of whether the department is prohibited by 43 U.S.C. § 1333(a)(2)(A) (1981), from levying a corporate income tax on income derived from the outer continental shelf. Since this question is one of first impression, and is vitally important to the state's ability to raise revenue via corporate income taxation, we grant Shell's request, and certify the following question as being of great public importance, pursuant to Florida Rules of Appellate Procedure 9.030(a)(2)(A)(v):
WHETHER THE STATE OF FLORIDA IS PROHIBITED BY 43 U.S.C. § 1333 (a)(2)(A) FROM IMPOSING A TAX UPON INCOME DERIVED FROM THE SALE IN THE UNITED STATES OF OIL EXTRACTED FROM THE OUTER CONTINENTAL SHELF?
Motion for rehearing DENIED, question certified.
JOANOS, J., concurs.
WENTWORTH, J., concurs and dissents with written opinion.
WENTWORTH, Judge, concurring and dissenting on rehearing.
I agree with denial of appellant's motion for rehearing but would grant cross-appellant's motion and reinstate the Department's determination of Shell's property factor in the apportionment formula. Section 220.42(1), Florida Statutes, requires that for Florida income tax purposes Shell's "method of accounting shall be the same as such taxpayer's method of accounting for federal income tax purposes." I would conclude upon reconsideration that this statutory language dictates a construction of Rule 12C-1.15(4)(b)5, F.A.R., to require that Shell's method of accounting for federal income tax purposes, by which it deducted intangible drilling costs from gross income and precluded capitalization thereafter, determines the method of accounting by which the property factor shall be computed in the apportionment formula under the Florida code. I would reverse on cross appeal because I review the action of the trial court as if it had complied, as we should, with the mandate for judicial notice of pertinent Florida statutes in resolving this litigation. § 90.201, Florida Statutes; Barnett Bank of Jacksonville v. Jacksonville National Bank, 457 So.2d 535 (Fla. 1st DCA (1984).[1] The context of the present *964 case is peculiarly unsuited to the application of a waiver doctrine against administrators in a way which subverts the terms of a statute merely because a rule, which functionally if not nominally implements all pertinent statutes, may not have been defended with perfection.
NOTES
[1] § 1333. Laws and regulations governing lands

(a) Constitution and United States laws; laws of adjacent States; publication of projected State lines; international boundary disputes; restriction on State taxation and jurisdiction
* * * * * *
(2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf. (emphasis supplied)
[2] 220.02 Legislative intent. 

* * * * * *
(5) It is the intent of the legislature that if there is included in any taxpayer's net income subject to tax under this code any item or items of income which are determined to be improperly so included because of a conflict with any federal statute, the Constitution of the United States, or the state constitution, all such items of income shall be excluded from the net incomes of all taxpayers subject to tax under this code, but all other provisions of this chapter, and their application, shall not be invalidated or in any way impaired by such required exclusion of an item or items of income.
[1] [the statute] was not called to the trial court's attention, nevertheless it must be followed by this court because the statute controls the matter before us. Bedenbaugh v. Adams, 88 So.2d 765 (Fla. 1956).
457 So.2d at 540.