469 So.2d 1387 (1984)
Edward V. REGAN, Comptroller of the State of New York, As Trustee of the Common Retirement Fund, Appellant,
v.
ITT INDUSTRIAL CREDIT COMPANY, Appellee.
No. AU-377.
District Court of Appeal of Florida, First District.
December 19, 1984.
*1388 Robert C. Gobelman and Jerry J. Waxman of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellant.
Roger J. McDonald for Butler, McDonald, Moon, Hull & Hockman, Orlando, for appellee/ITT Indus. Credit Co.

OPINION ON MOTION FOR EXTRAORDINARY RELIEF
SMITH, Judge.
After the filing and release of our original opinion, and Opinion on Motion for Rehearing or Clarification in this cause, and before issuance of our mandate, appellant filed his motion for extraordinary relief, seeking further rehearing or modification of our opinion and decision. In the interests of the proper administration of justice, both our original opinion filed June 21, 1984 [9 FLW 1361], and Opinion on Motion for Rehearing or Clarification filed October 26, 1984 [9 FLW 2242], are withdrawn, and the following opinion is substituted.
Appellant, who holds a mortgage and security agreement on certain hotel property located in Jacksonville, Florida, appeals a final summary judgment finding that appellee-ITT Industrial Credit Company (ITT) has a superior lien on computer equipment financed by ITT and located within the Jacksonville Hotel property. We reverse and remand for further proceedings. We also certify a question of great public importance.
Appellant is the assignee of the mortgage and security agreement which secures a note in the amount of $7,200,000 borrowed by Jacksonville Hotel, Ltd. (JHL), a limited partnership, for the purpose of putting together the hotel operation. The mortgage and security agreement which contains an after-acquired property clause states as follows:
To secure the performance and observance by the Mortgagor of all the covenants and conditions in the Note and in this Mortgage contained, and in order to charge the properties, interests and rights hereinafter described with such payment, performance, and observances, ... the Mortgagor has executed and delivered this Mortgage ... and by these presents does hereby grant, bargain, sell, alien, remise, release, convey, assign, transfer, Mortgage, hypothecate, pledge, deliver, set over, warrant and confirm unto the Mortgagee and its successors and assigns, forever, all of the following described land, real estate, buildings, improvements, fixtures, furniture, and other personal property (which together with any additional such property hereafter acquired by the Mortgagor and subject to the lien of this Mortgage or intended to be so, as the same may from time to time constitute, is hereinafter sometimes referred to as the Mortgaged Property); to wit:
(A) the land described on Exhibit A attached hereto and made a part hereof (hereinafter called the "Land"):
(B) All buildings, structures, and improvements of every nature whatsoever now or hereafter situated on the Land, and businesses operated thereon or therefrom, and the business assets thereof, including without limitation all franchises and licenses, and all fixtures, machinery, equipment and personal property of every nature whatsoever now or hereafter owned by the Mortgagor and located in, on or used or intended to be used in connection with or with the operation of said Land, buildings, structures or other improvements, including all extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing; and all of the right, title and interest of the Mortgagor in any such personal property or fixtures subject to a conditional sales contract, chattel Mortgage or similar lien or claim together with the benefit of any deposits or payments now or hereafter made by the Mortgagor or on its behalf. (emphasis supplied)
As part of outfitting the hotel for operation, JHL purchased computer equipment. The purchase of this computer equipment was financed by ITT in the sum of $278,460.00. ITT perfected its security interest *1389 by filing the necessary documents with the Secretary of State of Florida. ITT's contention that its filing was accomplished at the time or within ten (10) days after JHL took possession of the property, as required to acquire priority under Section 679.312(4), Florida Statutes (1979), is disputed by appellant. The trial court made no ruling on this issue.
Apparently, the hotel project suffered financial reversal. Appellant sought to foreclose on the property alleging that while ITT had a right, title or interest in the computer equipment, this interest was junior, subordinate and inferior to appellant's lien. ITT answered denying that appellant's lien was superior and contending that the emphasized portion of paragraph "(B)" quoted above meant that the mortgage is "subject to" a "conditional sales contract, chattel mortgage, or similar lien or claim" regarding equipment, and that it was the financier of equipment with a valid recorded security agreement. Thereafter, ITT moved for summary judgment, again arguing that its security interest is superior to and not subordinate to the foreclosure. The trial court entered summary judgment finding that the mortgage and security agreement specifically excludes a lien or claim such as that held by ITT, and therefore, ITT's lien or claim is superior to appellant's claim.
Little purpose would be served by repeating here the arguments of the parties concerning the meaning of the emphasized portion of paragraph "(B)," which they each to some extent insist may be gleaned by the placement of the commas and semi-colons in the text of the disputed provision. We find, after careful consideration of the contentions and arguments of both sides that the language in paragraph "(B)" merely recognizes and purports to include all interest of the mortgagor (JHL) in personalty that may be subject to a conditional sales contract, chattel mortgage or similar lien or claim such as a purchase money security interest. The words "subject to" are descriptive of the property the clause refers to, the result being that appellant's mortgage encumbers the mortgagor's interest in personalty which is "subject to" any conditional sales contracts, chattel mortgages or other liens (such as a purchase money security interest) held on the personalty. It is somewhat paradoxical, in view of the matter that most concerns us here, that this language is consistent with prior Florida case law that a security interest in after-acquired property attaches only to the debtor's interest in the property. International Harvester Credit Corporation v. American National Bank of Jacksonville, 296 So.2d 32 (Fla. 1974). In that case, the Supreme Court held that a party with a security interest in after-acquired property takes priority over a party with a purchase money security interest which has not been perfected within the time specified by Section 679.312(4), but this priority security protection to the earlier creditor is limited to the debtor's equity in the after-acquired property. Id. at 34, 35. We find, however, that International Harvester can no longer be relied upon as controlling law.
Appellant's motion for extraordinary relief directs our attention to a matter previously unnoticed by appellant, by this court, and presumably by appellee (appellee has not responded to appellant's latest motion). Specifically, appellant cites language appearing in the preamble to Chapter 78-222, Laws of Florida (1978)[1], indicating *1390 legislative disapproval of the decision of the Supreme Court of Florida in International Harvester Credit Corp. v. American National Bank of Jacksonville, 296 So.2d 32 (Fla. 1974), which was referred to and relied upon in our original and clarifying opinions (now withdrawn). Appellant urges that the language of the preamble to the legislative act, and the statutory amendments to subsection (4), Section 679.312, Florida Statutes, effected by it, preclude application of the International Harvester decision in this case.[2] Although we find the issue to be one which might still be open to question, we are compelled to agree with the position urged by appellant, even though raised in a seemingly untimely manner.[3]
This court is enjoined to follow controlling decisions of the Florida Supreme Court; indeed, the court is powerless to do otherwise. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). On the other hand, this court is also bound to interpret and apply the law as pronounced by the legislature, unless the legislative will collides with constitutional principles. Askew v. Schuster, 331 So.2d 297 (Fla. 1976).
We have concluded, although not without some difficulty, that we should view the legislative action in question as mandating a result contrary to that reached by the court in International Harvester. Accordingly, we hold that ITT's purchase money lien, if not filed within the time prescribed by Section 679.312(4), is subordinate and inferior to appellant's lien under its mortgage covering after-acquired property.
In so ruling, we have not overlooked the question of whether the legislative intent to supersede International Harvester, as indicated by the preamble to Chapter 78-222 (see footnote 1, supra), was effectively carried forward into substantive changes in the statute.[4] In this connection, although the legislature expressed its disapproval of the "debtor's equity" concept espoused by the court, neither the preamble nor the amendments (see footnotes 1, 2, supra) *1391 address the court's specific declaration that there were "no conflicting security interests" (296 So.2d at 34) presented under the facts present in that case  an obvious reference to the language of Section 679.312(4), which has not been amended.
Neither have we failed to note that the result reached by the court in International Harvester depended not so much upon statutory interpretation as upon broad constitutional and equitable principles, which arguably might be said to survive the modest attempt at modification represented by Chapter 78-222. Nor have we failed to note that the court was fully apprised of the current of opinion opposed to the reasoning and the result reached by the majority opinion. See dissent of Chief Justice Carlton, 296 So.2d 35-46.
We are satisfied, however, that in this instance the deference owed to the legislative authority is controlling, and that we are not bound to follow International Harvester. Providing for the creation or acquisition of liens against property, and the establishment of priorities among lienors, are matters clearly within the province of the legislature. By inserting the additional sentence in subsection (4) of the statute (see footnote 2, supra), the legislature adequately spelled out the consequences of a purchase money creditor's failure to timely file to perfect his security interest. Absent a violation of due process or other specific constitutional guarantees, the legislature's determination of filing requirements and lien priorities cannot be disregarded by the court. Askew v. Schuster, supra. Whatever the ambiguities in the operation and effect of the statute at the time of the International Harvester decision, we cannot in good conscience reasonably question the meaning and intended effect of the amended statute.[5] Furthermore, we are persuaded that the Florida Supreme Court will agree that International Harvester is no longer viable, and that the amended statute controls, at least in the absence of challenge to the validity of the statute under particular factual conditions on specific constitutional grounds.[6] No such challenge has been made in the case before us.
Since the record before us is susceptible to differing interpretations as to the date on which JHL took possession of the computer equipment, and the trial judge made no ruling on this issue, we remand for further proceedings, which shall include a determination of whether ITT complied with the filing requirements of Section 679.312(4), as interpreted in this opinion.
Finally, we certify to the Florida Supreme Court as a question of great public importance under Rule 9.030(a)(2)(A)(v) the following:
DOES THE PROTECTION AFFORDED PURCHASE MONEY CREDITORS UNDER THE "DEBTOR'S EQUITY" CONCEPT OF INTERNATIONAL HARVESTER SURVIVE THE ENACTMENT OF CHAPTER 78-222, LAWS OF FLORIDA?
MILLS and NIMMONS, JJ., concur.
NOTES
[1] The preamble to Chapter 78-222, Laws of Florida (1978), reenacting Section 671.201, Florida Statutes, and amending subsections (3) and (4) of Section 679.312, Florida Statutes, states:

WHEREAS, in a situation where there are conflicting security interests in the same collateral and a purchase money security interest has not been perfected within 10 days after the debtor took possession of the collateral, the Florida Supreme Court, in International Harvester Credit Corporation v. American National Bank of Jacksonville (296 So.2d 32), recognized "the earlier creditor's priority of security in after-acquired property," but limited such priority to "the debtor's equity in the after-acquired property," and
WHEREAS, the Uniform Commercial Code, as adopted by the Florida Legislature, and as interpreted in other jurisdictions, contains no such "debtor's equity" concept, and in fact provides for a complete and logical system of priorities, and
WHEREAS, it is the intent of the Legislature that the concept of "debtor's equity" should not be applicable in the State of Florida, and that the clear language in the Uniform Commercial Code should be adhered to, NOW, THEREFORE, ... .
[2] Subsection (4), Section 679.312 was amended by adding language as follows:

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 10 days thereafter. Failure to so perfect shall cause the priority of said purchase money security interest to be determined under subsection (5). (added language underlined).
[3] We observe, as acknowledged by appellant, that a party may not file more than one motion for rehearing under Rule 9.330, Florida Rules of Appellate Procedure. However, in view of the unusual circumstances presented here, we withheld issuance of our mandate, thereby preserving for consideration the matters asserted as grounds for extraordinary relief. No mandate having issued, we may on our own motion modify or clarify our prior opinion as it appears necessary to the proper administration of justice. See, Colonel v. Reed, 379 So.2d 1297, 1298 (Fla. 4th DCA 1980). Our further consideration of this case is not precluded by the rule, often invoked, that authorities not cited and issues not raised in the briefs or on oral argument cannot be raised for the first time on motion for rehearing. See, e.g., Shell Oil Company v. Department of Revenue, 461 So.2d 959 (Fla. 1st DCA 1984). Here, neither party cited International Harvester Credit Corporation v. American National Bank of Jacksonville, 296 So.2d 32 (Fla. 1974), in their briefs, although appellee argued for determination of priorities on principles somewhat similar to those expressed by the court in that case. Obviously, appellant could properly have raised the matter of legislative changes superseding International Harvester in its original motion for rehearing. That appellant did not do so does not prevent us from now taking notice of the enactments in order to determine whether our prior decision offends fundamental principles governing the administration of justice.
[4] "A preamble to a statute is an introductory or prefatory clause, following the title and preceding the enacting clause, explanatory of the reasons for its enactment and the objects sought to be accomplished. It is not an essential or effective part of an act and cannot enlarge or confer powers, or cure inherent defects in the statute." 49 Fla.Jur.2d, STATUTES, § 59, Preamble, p. 73.
[5] Other jurisdictions have rejected the International Harvester decision. Matter of Samuels & Co., Inc., 526 F.2d 1238 (5th Cir.1976); Rainier National Bank v. Inland Machinery Co., 631 P.2d 389 (Wash. App. 1981); General Electric Credit Corporation v. Tidwell Industries, Inc., 565 P.2d 868 (Ariz. 1977); Whitworth v. Krueger, 98 Idaho 65, 558 P.2d 1026 (1976). Law reviewers and commentators have also been highly critical of the decision. See, Case Comment, 3 Fla.St.U.L. Rev. 150 (1975); Note, 27 Univ. of Fla.L.Rev. 151 (1974); 30 U.Miami L.Rev. 99 (1975); 33 U.Miami L.Rev. 899 (1979).
[6] See, 73 Am.Jur.2d, Statutes, § 178, "Subsequent legislative action," p. 380.