FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA
_____

No. 1D21-1940
_____

ECHO RIVER SANCTUARY, LLC
f/k/a TSE PLANTATION, LLC,

    Appellant/Cross-Appellee,

    v.

21ST MORTGAGE CORP., MERI L.
HARRELL; CURTIS R. HARRELL, et
al.,

    Appellees/Cross-Appellants.
_____

On appeal from the Circuit Court for Suwannee County.
David W. Fina, Judge.

September 14, 2022

ON MOTION FOR REHEARING/REHEARING EN BANC

JAY, J.

    We deny the motion for rehearing, rehearing en banc, and/or certification. We withdraw our previous opinion, however, and substitute the following in its place.

    Appellant, Echo River Sanctuary, LLC ("Echo River"), appeals the trial court's judgment that awarded Appellee, 21st Mortgage Corporation ("21st Mortgage"), the right to possess a mobile home

that sits on a parcel of land in Live Oak, Florida. For the reasons that follow, we reverse the trial court's judgment.

## I.

Curtis and Meri Harrell—husband and wife—owned a 160-acre parcel of land in Live Oak. They initially resided in a singlewide trailer on the property. First Guaranty Bank and Trust Company of Jacksonville ("First Guaranty") held a mortgage on the land, which originated in 2006. The mortgage contained an after-acquired property clause, meaning that the mortgage encumbered the land as well as all future fixtures and improvements. The Harrells defaulted on their mortgage, and in November 2010, First Guaranty initiated foreclosure proceedings.

In November 2011, while the foreclosure process was ongoing, the Harrells purchased a 2009 Scotbilt doublewide mobile home and installed it as their new residence on the 160-acre lot. They financed their purchase with a loan from 21st Mortgage and granted 21st Mortgage a security interest in the mobile home. In December 2011, approximately one month after the purchase, Curtis Harrell filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida. Ultimately, Mr. Harrell breached the terms of his settlement agreement with the bankruptcy trustee, and in June 2014, the bankruptcy court revoked Mr. Harrell's bankruptcy discharge and dismissed the bankruptcy case.

First Guaranty's mortgage of the Harrells' land passed to CenterState Bank of Florida ("CenterState"). In December 2017, CenterState obtained a final judgment of foreclosure and became the owner of the 160-acres. In February 2018, pursuant to an option contract that it executed in June 2013, Echo River bought the property from CenterState.

Meanwhile, the Harrells also defaulted on their mobile home loan from 21st Mortgage. In November 2017, 21st Mortgage filed a replevin action against the Harrells to repossess the mobile home. Echo River intervened in the case as the owner of the land. Echo River asserted ownership of the mobile home, alleging that it was a fixture to the land that Echo River acquired from

2

CenterState. 21st Mortgage amended its complaint to add a replevin claim against Echo River. In response, Echo River asserted that 21st Mortgage never perfected its mobile home lien and that 21st Mortgage acted with unclean hands in Mr. Harrell's bankruptcy case.

In the first installment of the trial proceedings, the court granted summary judgment for Echo River, finding that 21st Mortgage's claim failed because 21st Mortgage acted with unclean hands in the bankruptcy proceedings by misrepresenting the mobile home's value and Mr. Harrell's equity. *See 21st Mortg. Corp. v. TSE Plantation, LLC*, 301 So. 3d 1120, 1122 (Fla. 1st DCA 2020) (the doctrine of unclean hands is an equitable defense that applies when "the plaintiff has engaged in some manner of unscrupulous conduct, overreaching, or trickery," and it may be raised by a defendant who claims the plaintiff's unscrupulous conduct toward a third party also injured the defendant). In the appeal from that judgment, this Court summarized the mobile home's role in the bankruptcy proceeding:

> When the bankruptcy trustee sought to bring the mobile home into the bankruptcy estate, 21st Mortgage filed an objection, arguing that the mobile home was only worth $30,000 and the Harrells owed more than $60,000 on the loan. 21st Mortgage asserted that there was no equity in the mobile home and, therefore, the bankruptcy trustee should abandon its interest in that asset. Neither the Harrells nor 21st Mortgage notified the bankruptcy trustee or the bankruptcy court that the mobile home at issue was not the old mobile home originally on the property, but a brand new Scotbilt mobile home recently financed for $81,000.

*Id.* at 1121.

This Court, finding that there was a genuine issue of material fact as to whether Echo River was injured by 21st Mortgage's purported misconduct in the bankruptcy proceeding, reversed the summary judgment. *Id.* at 1122–23 (noting that the unclean hands defense is "generally not suitable for resolution on summary judgment because it requires the determination of factual

3

disputes" and holding that Echo River's alleged injury was not clear from the record). On remand, the trial court held a non-jury trial. Before this trial, the parties stipulated to the following facts:

1. Meri and Curtis Harrell first executed documents granting a security interest in the Scotbilt mobile home on November 4 and 8, 2011.

2. Plaintiff [21st Mortgage] entered into a contract to fund the purchase of a Scotbilt Mobile Home by Defendants Meri and Curtis Harrell on November 18, 2011.

3. Meri and Curtis Harrell have not responded to this suit or the related claims.

4. The mobile home was installed on Defendant Harrell's property on November 18, 2011, including connecting to septic and utilities.

5. Defendant Curtis Harrell filed a Chapter 7 petition in the bankruptcy court on December 11, 2011, in the Middle District of Florida Jacksonville Division.

6. Plaintiff [21st Mortgage] first filed lien papers with the Department of Motor Vehicles on January 4, 2012.

7. Defendant TSE [Echo River] entered into an option contract to purchase the real property on June 18, 2013, from Park Properties, Inc., a subsidiary of CenterState Bank, should it acquire title to the property.

8. The property was sold to Echo River Sanctuary, LLC when it was known as TSE Plantation, LLC on February 2, 2018.[1]

---

[1] Paragraph 8 of the stipulation states that Echo River acquired the land on February 2, 2012. However, at the start of trial, the parties acknowledged that the 2012 date was a

4

Two witnesses testified at trial: Jeffrey Warkins, a staff attorney for 21st Mortgage, and Thomas S. Edwards, Jr., Echo River's managing member. Warkins testified that the Harrells defaulted on the mobile home loan in 2017. The Harrells' contract with 21st Mortgage characterized the mobile home as personal property. Because it is a doublewide, the mobile home has two certificates of title from the Department of Highway Safety and Motor Vehicles ("DHSMV"). The DHSMV issued those certificates on January 4, 2012. Each identifies 21st Mortgage as the sole lien holder. Warkins agreed that 21st Mortgage had not perfected its security interest in the mobile home at the time that Mr. Harrell filed his bankruptcy petition on December 11, 2011. Warkins also acknowledged that 21st Mortgage did not notify the bankruptcy court that 21st Mortgage attempted to perfect its security interest after Mr. Harrell filed his bankruptcy petition.

Edwards testified that during the time between when Echo River exercised its option contract with CenterState and when the closing occurred, he went to the property to inspect it. While there, he saw the mobile home—which bore a permanent real property sticker and had no license plate. The mobile home was affixed to the ground and had no wheels. It was connected to a septic system and utilities. It was also surrounded by trees and plants. Edwards concluded that "it was made a part of the property in that it was not going to be removed without doing damage []." Records from the Suwanee County tax collector's office showed that the mobile home was classified as real property. Edwards contacted CenterState about the mobile home. While CenterState would not issue a title warranty on the doublewide, as part of the land sale, it granted Echo River any rights or interests it had in the mobile home.

After completion of the non-jury trial, the court entered a boilerplate final judgment—in the form proposed by 21st Mortgage with little alteration—which concluded that 21st Mortgage's right to possess the mobile home was superior to that of Echo River's.

typographical error, and that the correct purchase date was February 2, 2018.

5

The judgment directed the clerk to issue a writ of possession[2] in favor of 21st Mortgage and declared that Echo River was not entitled to relief on its counterclaims. This appeal followed.

## II.

The trial court's determination that 21st Mortgage has a possessory interest in the mobile home that is superior to Echo River's is a legal conclusion that we review *de novo*.[3] *See Young v. Young*, 96 So. 3d 478, 478 (Fla. 1st DCA 2012). The central question in this appeal is whether 21st Mortgage has a valid lien on the mobile home that is enforceable against Echo River. Because the certificates of title that reflect 21st Mortgage's lien are void, we hold that 21st Mortgage cannot enforce its lien on the mobile home against Echo River.

### *The Effect of the Bankruptcy Stay*

The parties agree that the Harrells granted 21st Mortgage a security interest in the mobile home in November 2011 when the Harrells signed their security agreement and 21st Mortgage loaned them the money to buy the mobile home. *See* § 679.2031(1), Fla. Stat. (a creditor's security interest in collateral attaches when it becomes enforceable against the debtor). To guard its security interest in the mobile home against claims by third parties, 21st Mortgage had to perfect its interest. *See HSBC Bank USA, N.A. v. Perez*, 165 So. 3d 696, 700 (Fla. 4th DCA 2015); *Bay Cty. Sheriff's*

---

[2] 21st Mortgage alleges that the writ of "possession" language is a scrivener's error, and that the judgment should instead say writ of "replevin." In its cross-appeal, 21st Mortgage asks this Court to affirm the trial court's judgment and grant leave for the trial court to correct the scrivener's error. Because we reverse the trial court's judgment, this issue is moot.

[3] The judgment on appeal does not contain any findings of fact, to which we would have deferred if they were supported by competent, substantial evidence. *See Van v. Schmidt*, 122 So. 3d 243, 258 (Fla. 2013); *South Carolina Ins. Co. v. Wolf*, 331 So. 2d 337, 339 (Fla. 1st DCA 1976).

*Office v. Tyndall Fed. Credit Union*, 738 So. 2d 456, 458 (Fla. 1st DCA 1999). To perfect a security interest in a mobile home, a creditor must file its lien with the DHSMV. *See* § 319.27, Fla. Stat. Indeed, the statute provides that no lien on a mobile home shall be enforceable in any Florida court against other creditors or subsequent purchasers unless the lienholder files notice of its lien with the DHSMV and the DHSMV issues a certificate of title that notes the lien. *See* § 319.27(2), Fla. Stat.

If a creditor files lien documents with the DHSMV within fifteen days after the debtor receives possession of the mobile home and signs the security agreement, the date of perfection relates back to the date of attachment. § 319.27(3)(b). Stated differently, a creditor who follows the statutory procedure is deemed to have perfected its lien on the day of the lien's creation. However, when a creditor waits more than fifteen days to file the lien documents, the date of perfection is the date that the DHSMV receives the documents. *Id.*; *see, e.g., In re Perkins*, 73 B.R. 317, 318 (Bankr. N.D. Fla. 1987).

Here, the pre-trial stipulation establishes that 21st Mortgage "first filed lien papers" with the DHSMV on January 4, 2012—which is also the date of issue shown on the certificates of title. The parties do not dispute that this date was more than fifteen days after the Harrells took possession of the mobile home. Therefore, 21st Mortgage is not eligible for the "relates back" protection of section 319.27(3)(b). Nevertheless, because it filed lien documents with the DHSMV on January 4, 2012, 21st Mortgage argues that it perfected its lien on that date.

The trouble with this argument is that on December 11, 2011—nearly a month before 21st Mortgage attempted to perfect its lien—Mr. Harrell filed for bankruptcy. Filing a bankruptcy petition triggers "an automatic stay of all proceedings against a debtor effective the date the petition is filed and actions taken in violation of the stay are void even if there is no actual notice of the stay." *Personalized Air Conditioning, Inc. v. C.M. Sys. of Pinellas Cty., Inc.*, 522 So. 2d 465, 466 (Fla. 4th DCA 1988); *see* 11 U.S.C. § 362 (the Bankruptcy Code's automatic stay provision); *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982) ("Actions taken in violation of the automatic stay are void

7

and without effect."). The stay includes "any act to create, perfect, or enforce any lien against property of the estate." 11. U.S.C. §362(a)(4); *see Matter of Fla. Dairy, Inc.*, 22 B.R. 197, 199 (Bankr. M.D. Fla. 1982) ("Section 362(a) of the [Bankruptcy] Code provides that the filing of a petition for relief under the Code operates as a stay of any act to create, perfect, or enforce any lien against property of the Debtor's estate or the property of the Debtor. The stay is effective upon the date of filing and actions taken in violation of the stay are void even if there is no actual notice of the stay.").

Thus, the lien reflected on the mobile home's title certificates is a nullity because 21st Mortgage recorded that lien in violation of the automatic stay. *See Void* and *Voidable*, BLACK'S LAW DICTIONARY (11th. ed. 2019) (whereas a voidable act is "[v]alid until annulled," a void act is "an absolute nullity" that has "no legal effect"); *In re Hambright*, 635 B.R. 614, 631 n.6 (Bankr. N.D. Ala. 2022) ("In the Eleventh Circuit, actions that violate the stay are void and without effect (not merely voidable)."); *see also In re Jocelyn*, 574 B.R. 771, 772 (Bankr. M.D. Fla. 2017) (because "actions taken in violation of the automatic stay are void *ab initio*," a foreclosure sale that occurred days after the stay began was void); *McMahon v. Ryan*, 964 So. 2d 198 (Fla. 5th DCA 2007) (because an action taken in violation of the automatic bankruptcy stay is a nullity, service of process in a state court proceeding is void as to a party who filed a bankruptcy petition before being served).

21st Mortgage could have perfected its lien any time in the weeks between when its security interest attached and when Mr. Harrell filed his bankruptcy petition. In fact, given that First Guaranty initiated foreclosure proceedings against the Harrells' land in November 2010—a year before the Harrells bought the mobile home—21st Mortgage should have recognized the prudence of timely perfecting its security interest. Alternatively, 21st Mortgage could have sought the bankruptcy court's permission to perfect its lien after the onset of the automatic stay. *See* 11 U.S.C. § 362(d); *McMahon*, 964 So. 2d at 200 ("While it is true that actions taken in violation of the automatic stay are void, bankruptcy courts are authorized to validate such actions by retroactively annulling the stay when the circumstances warrant such relief.");

*see also In re Crisco*, 9 B.R. 641 (Bankr. S.D. Fla. 1981) (granting a creditor's motion for relief from the automatic stay). It chose to do neither.

Because 21st Mortgage recorded its lien with the DHSMV in violation of the automatic bankruptcy stay, the title certificates bearing that lien are nullities, meaning that it is as though the certificates proving the lien never existed. And because the title certificates are nullities, 21st Mortgage may not rely upon them to enforce its security interest in the mobile home against third parties like Echo River. *See* § 319.27(2), Fla. Stat.

The absence of valid certificates of title that reflect a creditor's lien is the distinguishing feature of this case. When confronted with a similar dispute between a real property purchaser and a mobile home creditor, the Fourth District held that the mobile home creditor prevailed. *See Ark Real Estate Servs., Inc. v. 21st Mortg. Corp.*, 300 So. 3d 1210 (Fla. 4th DCA 2020). As in this case, the mobile home creditor in *Ark* was 21st Mortgage. However, in *Ark*—a case which did not involve a bankruptcy petition—21st Mortgage properly perfected its security interest by timely filing paperwork with the DHSMV. The *Ark* opinion repeatedly referenced this fact. First, it noted that the trial court entered judgment for 21st Mortgage in part because 21st Mortgage "perfected its lien on the mobile home according to Florida law." *Id.* at 1213. Next, it quoted section 319.27(2) for the proposition that a lien on a mobile home is not enforceable against other creditors and subsequent purchasers unless it is perfected via the DHSMV's certificate of title process. *Id.* at 1213–14.

The *Ark* Court held that because 21st Mortgage "established its lien in the mobile home" under section 319.27(2), the mobile home's status as a fixture was immaterial. *Id.* at 1214. The *Ark* Court relied extensively on *Barnett Bank of Clearwater, N.A., v. Rompon*, 377 So. 2d 981 (Fla. 2d DCA 1979):

> *Rompon* is instructive here. . . . [T]he court explained [that] even when a mobile home becomes a fixture to real property after a lender has financed the purchase of the mobile home, any interest in the mobile home obtained

9

by the purchaser of the land at a Sheriff's sale is subject to the lender's *perfected* security interest:

> At the time of financing the Rompon purchase of the mobile home, the appellant *perfected* its security interest according to law. There is no requirement that appellant reperfect its security interest pursuant to Chapter 679 in the event the mobile home subsequently becomes a fixture to real property. Under the provisions of Chapters 319 and 320, Florida Statutes, appellees' interest in the mobile home is subject to appellant's *perfected* security interest.

*Id.* at 1214–15 (quoting *Rompon*, 377 So. 2d at 983) (emphasis added).

In this case, however, because it filed lien documents in violation of the automatic bankruptcy stay, 21st Mortgage never lawfully perfected its security interest. Accordingly, unlike the creditors in *Ark* and *Rompon*, it does not have a lien that is enforceable against third parties in the courts of this state. *See* § 319.27(2), Fla. Stat.; *see also Bay Cty. Sheriff's Office*, 738 So. 2d at 459 ("A lienholder's interest whose lien has not been perfected according to the requirements of section 319.27(1) is subject to forfeiture.") (quoting *In re Forfeiture of One 1979 Chevrolet C10 Van*, 490 So. 2d 240, 241 (Fla. 2d DCA 1986)).

*Effect of the Foreclosure Action*

As noted above, the 2006 mortgage on the Harrells' land contained an after-acquired property clause. Such clauses generally allow a foreclosure action to cover not only the mortgaged property, but also any additions to the property. *Rose v. Lurton Co.*, 149 So. 557, 558 (Fla. 1933) ("a mortgage on after-acquired property of the mortgagor will be held valid, and enforceable between the parties to it, by a suit for foreclosure."); *Pitts v. Pastore*, 561 So. 2d 297, 301 (Fla. 2d DCA 1990) ("It is well established that one can enter into a mortgage agreement to create a lien against property which the mortgagor will only acquire in the future."). When a mortgage contains an after-acquired

property clause, the mortgage holder's interest in an item that is covered by the clause is superior to a creditor's unperfected security interest in that item. *See Regan v. ITT Indus. Credit Co.*, 469 So. 2d 1387 (Fla. 1st DCA 1984) (a mortgage on a hotel, which included an after-acquired property clause, was superior to a creditor's purchase money security interest in the hotel's office equipment if the creditor did not timely perfect its lien on the equipment), *approved*, 487 So. 2d 1047 (Fla. 1986).

The Scotbilt mobile home—which the Harrells paid property taxes on,[4] declared to be their homestead, connected to a septic tank, and affixed to the land—qualifies as a fixture within the scope of the after-acquired property clause. *See Commercial Fin. Co. v. Brooksville Hotel Co.*, 123 So. 814, 816 (Fla. 1929) (identifying three factors for distinguishing between real property fixtures and personal property: whether the item is physically attached to the realty; the item's utility as a fixture; and the owner's intention for the item); *Strickland's Mayport, Inc. v. Kingsley Bank*, 449 So. 2d 928, 928–29 (Fla. 1st DCA 1984) (citing the factors from *Brooksville Hotel*, and noting that the "[e]xistence of a security agreement does not necessarily preclude characterization of an object as a fixture if other facts clearly indicate the annexor's intent to make a permanent accession to the realty."); *see also* § 193.075(1), Fla. Stat. ("A mobile home shall be considered permanently affixed [for property tax purposes] if it is tied down and connected to the normal and usual utilities."). And because 21st Mortgage never established a lien on the mobile home that is enforceable in court against the claims of third parties like Echo River, it was unprotected when the mobile home became a fixture within the scope of the mortgage's after-acquired property clause.

21st Mortgage draws our attention to Section 320.015(2), Florida Statutes ("Taxation of mobile homes"), which provides that "any mobile home classified by a seller or a lender as personal property at the time a security interest was granted therein to secure an obligation shall continue to be so classified for all

---

[4] The record reflects that 21st Mortgage paid the property taxes using funds from the Harrells' escrow account.

purposes relating to the loan and security interest, at least as long as any part of such obligation, or any extension or renewal thereof, remains outstanding." 21st Mortgage argues that this statute prevented, as a matter of law, the mobile home from becoming a fixture to the Harrells' land.

Subsection (1) of the statutory text describes when a mobile home becomes real property for tax purposes. *See Nordbeck v. Wilkinson*, 529 So. 2d 360 (Fla. 2d DCA 1988). Subsection (2) provides that a mobile home's conversion to real property for tax purposes does not alter the mobile home's status as personal property "for all purposes relating to the loan and security interest" while the loan remains outstanding. This subsection makes clear that a debtor cannot—by declaring his mobile home to be real property—unilaterally override the portion of *his contract* with a creditor that classifies a mobile home as personal property.

However, it is less clear that this restriction universally binds third parties, who are not signatories to the debtor's security agreement. *See Gen. Elec. Capital Corp. v. Sohn*, 566 So. 2d 841 (Fla. 1st DCA 1990) (rejecting a creditor's argument, which was based on its security agreement with a debtor and section 320.015(2), that its security interest in a mobile home survived a tax deed sale: "According to appellant, this part of the statute demonstrates that even if the mobile home was taxed with the lot as real property, the court should have found as a matter of law that the valid outstanding security interest in the mobile home rendered it personal property for the purpose of determining whether such indebtedness secured by the property would survive a valid tax deed. We disagree. . . . The fact that the contract classified the mobile home as personal property is not dispositive."). Indeed, Florida has long recognized that an item annexed to mortgaged real property can become part of the land—regardless of the terms of a security contract between a landowner and a creditor—if the mortgage holder does not consent to the item's classification as personal property. See *Burbridge v. Therrell*, 148 So. 204, 206 (Fla. 1933) ("If annexation to the realty has actually or constructively taken place, any agreement or understanding between mortgagor and a third party that the annexed thing shall continue to be considered as personalty, or regarded as severed, or understood to be subject to future

12

severance from the freehold, without the consent of the mortgagee, is unenforceable and will not be recognized as against the mortgagee's rights to foreclose his mortgage against the land and its annexed improvements.").

And here, there is no evidence that First Guaranty or CenterState consented to or had knowledge of the Harrells' installation of the doublewide on the mortgaged land or to the mobile home's classification as personal property. To the contrary, 21st Mortgage's corporate representative acknowledged that 21st Mortgage never notified First Guaranty or CenterState about the mobile home loan and the agreement securing the loan. This is consistent with the trial court's finding in its earlier summary judgment order that "[t]here is no evidence of record that either the Harrells or 21st Mortgage informed the [Bankruptcy] Court or CenterState Bank of the disposal of the old mobile home or the installation of the new Scotbilt mobile home." This is not surprising given that—as we noted in the first appeal—21st Mortgage issued the Harrells' loan at a time when First Guaranty had already initiated foreclosure proceedings against the mortgaged land:

> When the Harrells defaulted on their loan, First Guaranty Bank sought to foreclose on the property.
>
> During the pendency of the foreclosure case, the Harrells financed the purchase of a brand new Scotbilt mobile home for $81,000 through 21st Mortgage. The Harrells disposed of the existing mobile home on the land and substituted the Scotbilt mobile home in its place. Then, they filed for bankruptcy. . . .
>
> Neither the Harrells nor 21st Mortgage notified the bankruptcy trustee or the bankruptcy court that the mobile home at issue was not the old mobile home originally on the property, but a brand new Scotbilt mobile home recently financed for $81,000.

*TSE Plantation*, 301 So. 3d at 1121.

Moreover, the common characteristic of mobile home creditors who prevail over competing claimants is that they all properly perfected their liens under section 319.27. *See Ark*, 300 So. 3d 1210 (a creditor's *perfected* security interest in a mobile home survived the foreclosure sale of the real property where the mobile home sits); *USA Fin. Servs., Inc. v. Steward*, 588 So. 2d 299 (Fla. 1st DCA 1991) (a creditor's *perfected* security interest in a mobile home was superior to the holder of a final judgment imposing a constructive trust and lien against the mobile home); *Rompon*, 377 So. 2d 981 (a creditor's *perfected* security interest survived a sheriff's sale of the land where the mobile home was situated). In contrast, here, because of the bankruptcy stay as explained above, 21st Mortgage did not properly perfect its lien under the statute.

## III.

To summarize, we conclude that 21st Mortgage's *unperfected* security interest in the mobile home—which was a fixture to mortgaged real property—did not survive the real property's foreclosure by CenterState Bank (Echo River's predecessor-in-interest).[5] Thus, on the unusual facts of this case, the trial court erred in ruling that 21st Mortgage had a possessory interest in the mobile home that was superior to Echo River's. Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.

REVERSED and REMANDED for proceedings consistent with this opinion.

LEWIS and BILBREY, JJ., concur.

---

[5] This conclusion is not meant to suggest that 21st Mortgage is somehow precluded from seeking damages from the Harrells for the balance remaining on their loan.

14

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Thomas S. Edwards, Jr., of Edwards & Ragatz, P.A., Jacksonville, for Appellant/Cross-Appellee.

Laura H. Mirmelli of Busch Mills & Slomka LLP, Atlanta, Georgia, for Appellee/Cross-Appellant 21st Mortgage Corporation.

Thomas W. Thagard III of Maynard, Cooper & Gale, P.C., Birmingham, Alabama, pro hac vice, for Appellee/Cross-Appellant 21st Mortgage Corporation.

James C. Lester of Maynard, Cooper & Gale, P.C., Birmingham, Alabama, pro hac vice, for Appellee/Cross-Appellant 21st Mortgage Corporation.