510 So.2d 899 (1987)
FLORIDA POWER & LIGHT CO., Appellant,
v.
WESTINGHOUSE ELECTRIC CORP., Appellee.
No. 68540.
Supreme Court of Florida.
July 9, 1987.
Rehearing Denied September 3, 1987.
Alvin B. Davis and Nancy E. Swerdlow, of Steel, Hector & Davis, Miami, for appellant.
R. Benjamine Reid and Paul L. Nettleton, of Kimbrell & Hamann, Miami, for appellee.
OVERTON, Justice.
This case is before us on the following certified questions from the Eleventh Circuit Court of Appeals in Florida Power & Light Co. v. Westinghouse Electric Corp., 785 F.2d 952 (11th Cir.1986):
(1) Whether Florida law permits a buyer under a contract for goods to recover economic losses in tort without a claim for personal injury or property damage to property other than the allegedly defective goods.
(2) If Florida law precludes recovery for economic loss in tort without a claim for personal injury or property damage to other property, whether this rule *900 should be applied retroactively in this case.
Id. at 953.
We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. We answer the first question in the negative, agreeing with the majority view that contract principles are more appropriate than tort principles to resolve purely economic claims. With regard to the second question, we find our answer to the first question does not change any decision of this Court or modify any past principles of law and, consequently, the rule is applicable to all pending cases.
The Eleventh Circuit stated the applicable facts as follows:
In November 1965 Florida Power & Light (FPL) entered into contracts with Westinghouse in which Westinghouse agreed to design, manufacture, and furnish two nuclear steam supply systems, including six steam generators. According to the complaint, FPL discovered leaks in all six generators. FPL brought this suit, alleging that Westinghouse was liable for breach of express warranties in the contract and for negligence and seeking damages for the cost of repair, revision, and inspection of the steam generators.
The trial court denied Westinghouse's motion for partial summary judgment on the breach of warranty count and granted Westinghouse's motion for partial summary judgment on the negligence count on the grounds that Florida law precludes the recovery of economic loss without any claim of personal injury or property damage to other property.
785 F.2d at 953.
The appellant, Florida Power & Light Company, argues that a negligence claim, based on traditional concepts of duty, causation, and foreseeability, is the appropriate vehicle to resolve this issue. Florida Power & Light contends that their contract with Westinghouse created a legal duty on Westinghouse to use reasonable care in performing the contract and, even absent a contractual duty, tort law imposes a duty on Westinghouse to avoid harming Florida Power & Light. Florida Power & Light alleges that Westinghouse negligently designed and manufactured the steam generators, failed to provide proper operating instructions, and failed to warn of potential problems. Further, Florida Power & Light claims that Westinghouse knew that Florida Power & Light was relying on their proffered expertise in nuclear power and their conduct was the direct cause of Florida Power & Light's injuries.
In response, Westinghouse asserts that the majority view in the United States, including a United States Supreme Court decision, precludes recovery of economic damages in tort where there is no property damage or personal injury, relying principally on the theory expressed in Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965), as approved in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), and three Florida District Court of Appeal cases, GAF Corp. v. Zack, 445 So.2d 350 (Fla. 3d DCA 1984); Cedars of Lebanon Hospital v. European X-Ray Distributors, 444 So.2d 1068 (Fla. 3d DCA 1984); and Monsanto Agricultural Products Co. v. Edenfield, 426 So.2d 574 (Fla. 1st DCA 1982).
Justice Traynor expressed the reasoning behind the majority view in Seely v. White Motor Co.:
The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be *901 charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.
63 Cal.2d at 18, 45 Cal. Rptr. at 23, 403 P.2d at 151 (citations omitted).
Most courts have followed this theory, concluding that contract principles are more appropriate than tort principles for resolving economic loss claims. In East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the United States Supreme Court held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself," id. 106 S.Ct. at 2302. The opinion stated that tort law is concerned with safety and standards of care, and, consequently, is particularly unsuited to cover instances where a product injures only itself. Further, in the latter situation, the parties can negotiate risks by contractual agreement. The opinion reasoned:
Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received "insufficient product value." The maintenance of product value and quality is precisely the purpose of express and implied warranties.
Id. at 2303 (footnotes and citations omitted).
The policy adopted by the majority of courts encourages parties to negotiate economic risks through warranty provisions and price. On the other hand, the minority view exposes a manufacturer to liability for negligence based on economic loss alone, replacing the freedom of bargaining and negotiation with a duty of care. A duty of care, as emphasized in East River, is particularly unsuited to the vagaries of individual purchasers' product expectations. As important, under the minority view, a manufacturer faced with this kind of liability exposure must raise prices on every contract to cover the enhanced risk. Clearly, product value and quality is covered by express and implied warranties, and warranty law should control a claim for purely economic losses. In East River, the United States Supreme Court explained:
While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain. The expectation damages available in warranty for purely economic loss give a plaintiff the full benefit of its bargain by compensating for forgone business opportunities.
Id.
Florida's District Courts of Appeal have ruled similarly in their decisions. In Monsanto Agricultural Products v. Edenfield, 426 So.2d 574 (1st DCA 1982), the appellee purchased herbicides which failed to perform as expected. In prohibiting appellee from bringing a negligence claim, the court stated:
Tort law imposes upon manufacturers a duty to exercise reasonable care so that the products they place in the marketplace will not harm persons or property. However, tort law does not impose any duty to manufacture only such products as will meet the economic expectations of purchasers. Such a duty does, of course, exist where the manufacturer assumes the duty as part of his bargain with the purchaser, or where implied by law, but the duty arises under the law of contract, and not under tort law. Prosser, Law of Torts sec. 101 (4th Edition 1971); Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965); Clark v. International Harvester Co., 99 Idaho 326, 581 P.2d 784 (1978).
Id. at 576.
Similarly, in GAF Corp. v. Zack, 445 So.2d 350 (Fla. 3d DCA 1984), the district court held in a defective products case that "the law of torts affords no cause of action for the plaintiff ... to recover for its purely economic losses in this case." Id. at 351. *902 Further, in Cedars of Lebanon Hospital v. European X-Ray Distributors, 444 So.2d 1068 (Fla. 3d DCA 1984), the district court held that "strict liability should be reserved for those cases where there are personal injuries or damage to other property only," id. at 1071, precluding the recovery for economic loss in tort.
We agree and find no reason to intrude into the parties' allocation of risk by imposing a tort duty and corresponding cost burden on the public. We hold contract principles more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage. The lack of a tort remedy does not mean that the purchaser is unable to protect himself from loss. We note the Uniform Commercial Code contains statutory remedies for dealing with economic losses under warranty law, which, to a large extent, would have limited application if we adopted the minority view. Further, the purchaser, particularly in a large commercial transaction like the instant case, can protect his interests by negotiation and contractual bargaining or insurance. The purchaser has the choice to forego warranty protection in order to obtain a lower price. We conclude that we should refrain from injecting the judiciary into this type of economic decision-making.
With regard to the second question, we hold the economic loss rule approved in this opinion is not a new principle of law in Florida and has not changed or modified any decisions of this Court. In fact, the economic loss rule has a long, historic basis originating with the privity doctrine, which precluded recovery of economic losses outside a contractual setting. Consequently, we hold that the economic loss rule should be applied to the instant case.
Having answered the questions certified by the United States Circuit Court of Appeals for the Eleventh Circuit, we remand for its disposition of this matter.
McDONALD, C.J., and EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
ADKINS, J. (Ret.), dissents with an opinion.
ADKINS, Justice (Ret.) dissenting.
I dissent.
In A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), the defendant architect was alleged to have negligently prepared plans and specifications resulting in costly delays to the contractor. We characterized this as a products liability case in which "economic loss" resulted. We held that the contractor who sustained an "economic loss" had a cause of action against a negligent architect.
We recently permitted recovery for economic loss in First American Title Insurance Co., Inc. v. First Title Service Company of the Florida Keys, Inc., 457 So.2d 467 (Fla. 1984), which was a negligence action against an abstract company for purely economic losses.
The opinion of the majority is inconsistent with these, and other, cases holding that liability can be imposed for economic loss in tort. Tort law is intended to provide protection as to the safety of a product and as to its fitness.
We should not treat "tort" as another dirty "four letter word" and close our eyes to its damage.