693 So.2d 602 (1997)
Michael L. DELGADO and Joyce L. Delgado, Appellants,
v.
J.W. COURTESY PONTIAC GMC-TRUCK, INC., Appellee.
No. 96-01692.
District Court of Appeal of Florida, Second District.
March 21, 1997.
*603 Scott T. Borders of Clark, Charlton & Martino, P.A., Tampa, for Appellants.
Hala A. Sandridge of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellee.
LAZZARA, Judge.
The appellants, Michael and Joyce Delgado, seek review of the trial court's order granting the appellee's, J.W. Courtesy Pontiac GMC-Truck, Inc.'s, motion for judgment on the pleadings on the basis that Florida's economic loss rule barred their causes of action against the appellee founded on common law fraud and the Florida Deceptive and Unfair Trade Practices Act, sections 501.201-501.213, Florida Statutes (1991) (the FDUTPA). Because we conclude that the trial court erroneously invoked the economic loss rule to exclude the bringing of these claims, we reverse and remand for further proceedings. In doing so, we also certify to the Florida Supreme Court a question of great public importance regarding whether the rule has eliminated a consumer's cause of action brought under the substantive provisions of the FDUTPA when the action is based on a written sales contract.
We begin our resolution of this case with a recognition of the well-settled law of Florida that in ruling on a defendant's motion for judgment on the pleadings filed pursuant to Florida Rule of Civil Procedure 1.140(c), "all allegations in the complaint must be accepted as true and all allegations in the answer, which are automatically denied, must be accepted as false, the fundamental question being whether a cause of action would be established by proving the plaintiff's allegations." Robert L. Turchin, Inc. v. Gelfand Roofing, Inc., 450 So.2d 554, 556 (Fla. 3d DCA), review dismissed, 453 So.2d 1365 (Fla.1984). We also adhere to the fundamental principle that a plaintiff is not required to file a reply denying an affirmative defense in order to treat that defense as denied for purposes of a motion for judgment on the pleadings. See, e.g., Kitchen v. Kitchen, 404 So.2d 203, 205 (Fla. 2d DCA 1981). Accordingly, in deciding this case, we must accept the allegations of the appellants' complaint as true and deem any affirmative defense interposed by the appellee as denied.
The appellants' preliminary allegations reflect that in September of 1992 they purchased from the appellee what they believed was a new motor vehicle as defined in section 320.60(10), Florida Statutes (1991), that is, a *604 vehicle for which the equitable or legal title had never been transferred to an ultimate purchaser. They further alleged that the purchase was based on a written retail installment sales contract, a copy of which they attached to their complaint. The appellants also claimed that the appellee was a motor vehicle dealer licensed and doing business under the provisions of section 320.27, Florida Statutes (1991). They concluded with the critical assertion that the appellee violated the duty imposed on such a dealer by section 320.27(9)(n), in failing to disclose to them that, prior to the purchase, the vehicle had sustained various property damage in an accident and that the repair cost of the damage exceeded three percent of the manufacturer's suggested retail price. Based on these core facts, the appellants sought damages in two counts of their complaint.
In count one, founded on the FDUTPA, the appellants claimed that the purchase of the vehicle from the appellee was a consumer transaction within the meaning of section 501.203. They further alleged that the appellee's failure to disclose the fact that the vehicle had been damaged and repaired constituted a deceptive act under section 501.204. As a consequence of the appellee's alleged deception, the appellants claimed their entitlement to damages pursuant to section 501.211, plus attorney's fees and court costs under section 501.2105.
In count two, based on common law fraud, the appellants asserted that the appellee intentionally failed to disclose the material fact of the damage and repair to the vehicle, in violation of a duty imposed by law, in order to induce the appellants to purchase the vehicle. They also alleged that had the appellee disclosed this fact they would not have purchased the vehicle or, in the alternative, would not have purchased it at the price paid. As a result of the appellee's alleged fraud, the appellants sought relief in the form of a general prayer for damages, as well as interest and costs.
After filing an answer and affirmative defense, the appellee filed a motion for judgment on the pleadings. The appellee alleged that because the appellants' claims were based on, or arose out of, the parties' written contract, and because the appellants allegedly suffered purely economic damages, the economic loss rule barred the appellants from stating causes of action based on fraud and the FDUTPA and, therefore, it was entitled to a judgment as a matter of law. Following a hearing on the motion, during which the trial court expressed concern over the appellants' failure to pursue a breach of contract claim, the trial court agreed with the appellee's argument and entered a written order in which it determined that the appellants' claims were "barred by the economic loss doctrine in Florida."[1]
Our resolution of the correctness of the order as it relates to the fraud count does not require an extended discussion because it is directly governed by the supreme court's recent decision in HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla. 1996), which, we note, the supreme court had not decided at the time the trial court entered its order. In that case, the court rejected the contention, made within the context of a contractual relationship, "that the economic loss rule has obliterated causes of action for independent torts such as fraudulent inducement." Id. at 1239. It held, instead, that "[t]he economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action." Id. The court further explained that "[w]here a contract exists, a tort action will *605 lie for either intentional or negligent acts considered to be independent from acts that breached the contract." Id.
In this case, the allegations of the appellants' complaint, when accepted as true, are consistent with the holding of HTP, Ltd. in that they reflect that the appellee perpetrated a fraud independent of the contract. The complaint also sufficiently alleges that the fraud was comprised of intentionally failing to disclose a material fact concerning the condition of the vehicle in violation of a statutory duty compelling disclosure of that fact. See Gutter v. Wunker, 631 So.2d 1117, 1118 (Fla. 4th DCA), cause dismissed, 637 So.2d 235 (Fla.1994); Franklin v. Brown, 159 So.2d 893, 898 (Fla. 1st DCA 1964). Accordingly, we reverse the trial court's judgment on the pleadings as to the fraud count.
As to the FDUTPA count, we also determine that the economic loss rule has not eliminated this claim. Our reasons for arriving at this conclusion warrant a more extensive analysis.
In 1973, the Florida legislature created the FDUTPA. Ch. 73-124, § 1, at 188-195, Laws of Fla. (codified at §§ 501.201-501.213, Fla.Stat. (1973)). In doing so, it expressly mandated in section 501.202 that this new legislation was to "be construed liberally to promote" three distinct but interrelated "policies":
(1) To simplify, clarify, and modernize the law governing consumer sales practices.
(2) To protect consumers from suppliers who commit deceptive and unfair trade practices.
(3) To make state regulation of consumer sales practices consistent with established policies of federal law relating to consumer protection.
To further these policy objectives, the legislature declared that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" were unlawful. § 501.204(1). Although it did not define what it meant by "unfair or deceptive acts or practices," the legislature expressed its intent that "in construing subsection (1) of this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s.5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))," which prohibits such acts or practices in the federal domain.
To effectuate these underlying policy considerations, the legislature conferred on "a consumer who has suffered a loss as a result of a violation" of the FDUTPA the right to bring an "individual action" to "recover actual damages, plus attorney's fees and court costs." § 501.211(2). It limited such damages, however, to "the property that is the subject of the consumer transaction" and specifically excluded claims for personal injury or death or damage to other property. § 501.212(3). The legislature specifically defined the type of property which is the subject of such a transaction for which actual damages were recoverable to include "an item of goods, a consumer service, or an intangible." § 501.203(1). It further provided that a consumer who prevails in civil litigation brought under the FDUTPA was entitled to receive reasonable attorney's fees and costs. § 501.2105. Finally, the legislature expressed its clear intent that the remedies afforded by this new legislation were to be "in addition to remedies otherwise available for the same conduct under state or local law." § 501.213(1).
We note at this juncture that the 1973 provisions of the FDUTPA which we have quoted and analyzed are found virtually word for word in the 1991 version which is at issue in this case. We also point out that in 1993 the legislature amended some of these provisions. Ch. 93-38, § 1, at 207 (amending § 501.202); § 2, at 207-209 (amending § 501.203); § 3, at 209 (amending § 501.204); § 11, at 212 (amending § 501.2105); § 12, at 212 (amending § 501.211); § 13, at 212 (amending § 501.212), Laws of Fla. Our reading of these amendments, however, leads us to conclude that the legislative purpose for the changes was to strengthen rather than diminish the original goal of the FDUTPA, which was to protect consumers from those who engage in unfair and deceptive trade practices and acts. As a prime example, the legislature amended the policy provisions of *606 section 501.202 by adding language in subsection (2), which declared that one of the additional policies it sought to promote was the protection of the "consuming public" from those who engage in "unconscionable" acts or practices. It implemented this new policy determination by amending the substantive provisions of section 501.204 to include "unconscionable acts and practices" as additional conduct which is declared unlawful. As a further example, the legislature enacted a more expansive definition of the type of property that is the subject of a consumer transaction to now include "any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." § 501.203(8). See also § 501.203(9) (providing for an extensive definition of "thing of value").
We glean from this overall analysis that by promulgating the FDUTPA the Florida legislature has clearly intended as a matter of public policy, which it deems to be consistent with federal policy, to create a simplified statutory cause of action which bestows additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts. Other Florida courts have agreed with each of these assessments. In Pinellas County Department of Consumer Affairs v. Castle, 392 So.2d 1292, 1293 (Fla. 1980), the supreme court emphasized that the remedies of the FDUTPA "are in addition" to other remedies available under state or local law. In Suris v. Gilmore Liquidating, Inc., 651 So.2d 1282, 1283 (Fla. 3d DCA 1995), the court applied federal law in concluding that a practice is unfair under the FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. In Marshall v. W & L Enterprises Corp., 360 So.2d 1147, 1148 (Fla. 1st DCA 1978), the court observed that the obvious purpose of the FDUTPA "is to make consumers whole for losses caused by fraudulent consumer practices." Finally, in Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984), review denied, 461 So.2d 114 (Fla.1985), the court defined actual damages under the FDUTPA in terms of the economic diminution in value of a product or service purchased. Accord Urling v. Helms Exterminators, Inc., 468 So.2d 451, 454 (Fla. 1st DCA 1985) (determining that the FDUTPA "is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer").
Furthermore, by enacting the FDUTPA, the legislature clearly intended to establish a new cause of action for the benefit and protection of the consuming public. As a new cause of action, the FDUTPA constitutes a substantive law which creates, defines, and regulates rights which are to be administered by the courts. See Florida Wildlife Fed'n v. State Dep't of Environmental Regulation, 390 So.2d 64, 66 (Fla.1980); see also Caloosa Property Owners Ass'n v. Palm Beach County Bd. of County Comm'rs., 429 So.2d 1260, 1267 (Fla. 1st DCA) (when new cause of action is established by statute, law is substantive in nature), review denied, 438 So.2d 831 (Fla. 1983).
Against this legislative background, we turn to the critical issue of whether the economic loss rule has eliminated a claim brought under the FDUTPA when, as here, the consumer transaction is based on a written sales contract. We begin by observing again that "[t]he economic loss rule is stated with ease but applied with great difficulty" and that "[l]awyers and judges alike have found it difficult to determine when the rule applies and when an exception is appropriate." Sandarac Ass'n v. W.R. Frizzell Architects, Inc., 609 So.2d 1349, 1352 (Fla. 2d DCA 1992), review denied, 626 So.2d 207 (Fla.1993). Generally speaking, however, the economic loss rule, when applied within the context of a written contractual relationship, does not permit the existence of a cause of action in favor of a party where the party, through the utilization of traditional tort principles, seeks to recover only pure economic damages resulting from the purchase of an allegedly defective product and the claim for damages is not accompanied by any *607 allegation that the product caused physical injury or damage to any other property. See, e.g., Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899 (Fla. 1987). In applying this rule in Florida Power & Light, our supreme court held in response to a certified question that "Florida law [does not] permit a buyer under a contract for goods to recover economic losses in tort without a claim for personal injury or property damage to property other than the allegedly defective goods." Id. at 900. The court subsequently extended the scope of the economic loss rule to a contract for services by holding in response to a restated certified question that "Florida [does not] permit a purchaser of services to recover economic losses in tort without a claim for personal injury or property damage." AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla.1987).
As discussed in Florida Power & Light, a majority of the jurisdictions of this country have adopted the economic loss doctrine based on a judicial policy determination that contract principles are more appropriate than tort principles for resolving economic loss claims unaccompanied by physical injury or property damage. Id. at 900-901. The underlying premise for such a policy flows from the conclusion that as between parties to a contract and the consuming public, the contracting parties and not the public should bear the cost of economic losses sustained because of a failure of one of the parties to bargain for adequate contract remedies. Id. at 901-902. Thus, as the court instructed in Florida Power & Light, the judiciary should not "intrude into the parties' allocation of risk by imposing a tort duty and corresponding cost burden on the public" and "should refrain from injecting [itself] into this type of economic decisionmaking." Id. at 902. Otherwise, it has been suggested, "contract law would drown in a sea of tort." East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986).
Following its decisions in Florida Power & Light and AFM, our supreme court has continuously adhered to this fundamental policy determination by steadfastly refusing to carve out exceptions to the economic loss rule. In one instance, it declined to permit homeowners, whom it characterized as "an appealing, sympathetic class," to recover purely economic losses from a concrete supply company, with which they had no privity, under a negligence theory in a setting in which the homeowners claimed that the concrete supplied to construct their homes was allegedly defective but did not claim that the defective concrete had caused personal injury or damage to any other property, except to their homes. Casa Clara Condominium, Ass'n v. Charley Toppino and Sons, Inc., 620 So.2d 1244 (Fla.1993). In refusing to make an exception to the economic loss rule for homeowners, the court reaffirmed its holding in Florida Power & Light that contract principles rather than tort principles were more appropriate in resolving economic loss claims unaccompanied by physical injury or damage to other property. 620 So.2d at 1247.
The court later declined to allow an owner of two buses which caught fire and were destroyed in an abrupt, accident-like event to recover economic damages from the bus manufacturer, with which it had no privity, under negligence and products liability principles in a setting in which the owner alleged that the buses were defectively manufactured and the manufacturer failed to warn of the defects. Airport Rent-A-Car v. Prevost Car, Inc., 660 So.2d 628 (Fla.1995). In its decision, the court addressed three certified questions designed to determine whether certain exceptions to the economic loss rule should be recognized to permit recovery. Relying on Casa Clara, AFM, and Florida Power & Light, as well as the United States Supreme Court's opinion in East River, the court specifically declined to adopt the bus owner's three suggested exceptions to the rule by finding that: (1) "the economic loss rule cannot be circumvented by the no alternative theory of recovery exception, absent the required supervisory responsibilities as enunciated in Moyer";[2] (2) "a sudden calamitous *608 event will not circumvent the economic loss rule"; and (3) "failure to warn, without the requisite harm, will not circumvent the economic loss rule to allow a cause of action where the plaintiffs allege a duty to warn which arose from facts which came to the knowledge of the company after the manufacturing process and after the contract." 660 So.2d at 631-632.
It is clear from this analysis that the Florida Supreme Court is firmly wedded to a judicial policy that does not recognize a cause of action rooted in tort as the appropriate vehicle for resolving purely economic loss claims unaccompanied by physical injury or damage to other property and is thus committed to the philosophy that contract principles are more appropriate than tort principles for resolving such claims. Furthermore, we do not view the court's latest foray into the realm of the economic loss rule in HTP, Ltd. as a signal that it is retreating from this entrenched position. The court in that case did not create a new exception to the economic loss rule. Instead, its ultimate holding that the rule "has not eliminated" a cause of action for tortious conduct independent of a contractual breach was simply a reaffirmation of long-standing precedent, with which the court agreed, that a suit for breach of contract and a suit for fraud in inducing the contract constitute different causes of action with separate and consistent remedies and thus both may "exist" at the same time. 685 So.2d at 1239. The court concluded its analysis, therefore, by recognizing "that fraudulent inducement claims may coexist with breach of contract claims, safe from the economic loss rule...." Id. at 1240 (emphasis added) (approving reasoning of dissent in Woodson v. Martin, 663 So.2d 1327, 1330 (Fla. 2d DCA 1995) (en banc) (Altenbernd, J., dissenting)), quashed, 685 So.2d 1240 (Fla. 1996).
In resolving the issue before us, we acknowledge that our supreme court has mandated that we must strictly adhere to its judicial pronouncements, including those based on considerations of public policy, such as the economic loss rule. See, e.g., Hoffman v. Jones, 280 So.2d 431 (Fla.1973). We are also mindful, however, that our supreme court, in recognition of the constitutional doctrine of separation of powers, has consistently directed that courts have a binding allegiance to construe statutory pronouncements in strict accord with the legislative will, so long as the statute does not violate organic principles of constitutional law. See, e.g., In re Apportionment Law, Senate Joint Resolution No. 1305, 263 So.2d 797 (Fla.1972); City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769 (1914). As the court first explained long ago in Bowden:
Where a statute does not violate the federal or state Constitution, the legislative will is supreme, and its policy is not subject to judicial review. The courts have no veto power, and do not assume to regulate state policy; but they recognize and enforce the policy of the law as expressed in valid enactments, and decline to enforce statutes only when to do so would violate organic law.
67 Fla. at 188, 64 So. at 772 (emphasis added). It later quoted this passage from Bowden in In re Apportionment Law and concluded with the following observation:
Hence, this Court, in accordance with the doctrine of separation of powers, will not seek to substitute its judgment for that of another coordinate branch of the government, but will only measure acts done with the yardstick of the Constitution. The propriety and wisdom of legislation are exclusively matters for legislative determination.
Id. at 806. Accord Askew v. Schuster, 331 So.2d 297, 300 (Fla.1976); Regan v. ITT Industrial Credit Co., 469 So.2d 1387, 1390 (Fla. 1st DCA 1984), approved, 487 So.2d 1047 (Fla.1986).
*609 Our supreme court has also directed that when a court construes a statutory scheme, it may not question the "substantial legislative policy reasons" underlying the statute nor exercise any "prerogative to modify or shade" the "clearly expressed legislative intent" of the statutory enactment "in order to uphold a policy favored by the court." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (emphasis added). In line with this directive, it reaffirmed the fundamental principle that courts of this state are:
without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.
Id. at 219 (quoting American Bankers Life Assurance Co. of Florida v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)) (emphasis in original). See also McDonald v. Roland, 65 So.2d 12, 14 (Fla.1953) (where legislature's intent is clearly discernible, court's duty is to declare it as it finds it, and court may not modify or shade it out of any considerations of policy); cf. Allstate Ins. Co. v. RJT Enters., Inc., 692 So.2d 142 (Fla.1997) (where there is absence of clear legislative directive, court may not construe statute in such a way as to result in major policy change not intended by legislature). Accordingly, so long as a statutory enactment passes constitutional scrutiny, the judicial branch, in construing the enactment, has no prerogative to alter or limit the legislative policy clearly expressed in the enactment in order to further a different policy or view preferred by the courts, including one favored by the Florida Supreme Court. See Webb v. Hill, 75 So.2d 596, 605 (Fla.1954).
Measured against these principles, we now confront the critical issue of whether the economic loss rule has eliminated a statutory cause of action under the FDUTPA involving a consumer transaction based on a written sales contract. As we have pointed out, the FDUTPA constitutes a substantive law which is to be construed liberally when administered by the courts. As we have further indicated, it also represents a statutory manifestation of a legislative policy decision that the consuming public is entitled to expanded remedies for recovering economic losses suffered as a consequence of deceptive and unfair trade practices and acts. Thus, in construing this statutory scheme in accord with the principles of Bowden, In re Apportionment Law, and Holly, and notwithstanding the dictates of Hoffman, we hold that the judicial policy pronouncement in the form of the economic loss rule promulgated by our supreme court has no application within the realm of a statutory cause of action brought under the FDUTPA when the genesis of such a claim is founded on a written sales contract. Accordingly, in administering the FDUTPA, courts do not have the right to limit and, in essence, to abrogate, as the trial court did in this case, the expanded remedies granted to consumers under this legislatively created scheme by allowing the judicially favored economic loss rule to override a legislative policy pronouncement and to eliminate the enforcement of those remedies. See Burke v. Napieracz, 674 So.2d 756, 759 (Fla. 1st DCA 1996); Rubio v. State Farm Fire & Casualty Co., 662 So.2d 956, 957 n. 2 (Fla. 3d DCA 1995), review denied, 669 So.2d 252 (Fla.1996). In sum, any tension between the legislative policy embodied in the FDUTPA and the judicial policy embodied in the economic loss rule must be resolved under the doctrine of the separation of powers in favor of the legislative will so long as the FDUTPA passes constitutional scrutiny.[3]
Furthermore, in our view, any construction of the FDUTPA which would allow the economic loss rule to eliminate a cause of action based on a written sales contract, such as the appellants', would lead to a result not intended by the legislature and would render the FDUTPA meaningless within a contractual context. In reaching this conclusion, we specifically reject the appellee's argument that any limiting effect the rule would have on the *610 FDUTPA by excluding sales-based consumer contract claims from its purview would not emasculate the FDUTPA because it would still apply to claims arising from noncontractual settings. We support our position with the following statutory analysis.
When the legislature originally enacted this legislation, it broadly defined the type of transaction subject to the protection of the statutory scheme to include "a sale,... of an item...." Ch. 73-124, § 1, at 189, Laws of Fla. (codified at § 501.203(1), Fla. Stat.(1973)). In its later amendments to the FDUTPA in 1993, the legislature continued to include a sale within its ambit by defining a protected transaction to include "the advertising, soliciting, providing, offering, or distributing, whether by sale, ... of any good or service...." Ch. 93-38, § 2, at 208, Laws of Fla. (codified at § 501.203(8), Fla. Stat.(1993)). Because the legislature did not specifically define the term "sale" in the FDUTPA, we may resort to case law, related statutory provisions which define the term, and the dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to this word. See State v. Hagan, 387 So.2d 943, 945-946 (Fla.1980). Using these reference sources, we conclude that the plain and ordinary meaning of "sale" found in the FDUTPA clearly contemplates a contractual relationship. See Edwards v. Baldwin Piano Co., 79 Fla. 143, 149, 83 So. 915, 917 (1920) (defining "sale" to mean "a contract to pass rights of property"); Marty v. First Fed. Sav. and Loan Ass'n of West Palm Beach, 257 So.2d 576, 578 (Fla. 4th DCA 1971) (defining "sale" based on dictionary definition to mean "a contract whereby property is transferred from one person to another"), cert. denied, 262 So.2d 446 (Fla.1972); § 672.106(1), Fla.Stat. (1995) (defining "sale" to consist of "the passing of title from the seller to the buyer for a price" and "present sale" to mean "a sale which is accomplished by the making of a contract");[4] § 686.402(14), Fla.Stat.(1995) (defining "sale" to mean and include "or other contract ... looking to a sale");[5]Merriam-Webster's Third New International Dictionary 2003 (1986) (defining "sale" to include "a contract transferring the absolute or general ownership of property from one person or corporate body to another").[6]
Accordingly, because the legislature clearly provided that a "sale" was a protected consumer transaction and because a "sale" necessarily stems from a contractual relationship, it would be illogical for us to conclude that the legislature did not intend for the FDUTPA to apply to sales-based consumer contract claims, safe from the limiting strictures of judicial policy pronouncements such as the economic loss rule. To construe the FDUTPA otherwise would lead to an absurd result not contemplated by the legislature and would, in a contractual setting, severely limit and render meaningless the underlying legislative policy reasons which prompted its enactment. This the law forbids us to do. See, e.g., State v. Webb, 398 So.2d 820, 824 (Fla.1981) (court should avoid construction of statute that would lead to absurd result or would render statute purposeless); see also Holly, 450 So.2d at 219 (court has no power to limit express terms of statute or its reasonable and obvious implications).
Finally, it would be incongruous for us to hold that the economic loss rule, with its central purpose of restricting a party to the recovery of purely economic damages suffered in a contractual setting, can be used to prevent a consumer from invoking the expanded remedies of the FDUTPA in the *611 same setting when the FDUTPA allows only for the recovery of the same type of damages.[7] The incongruity of such a holding would again frustrate the will of the legislature by limiting liability for deceptive and unfair trade practices and acts occurring within the context of a written consumer sales contract and would be in direct contravention of public policy. See Rollins, 454 So.2d at 585 (any attempt to limit liability for deceptive or unfair trade practices would be contrary to public policy). Moreover, because the economic loss rule is not a new rule of law in Florida, see Florida Power & Light, 510 So.2d at 902, and because the legislature is presumed to have an awareness of the law when it enacts a statutory cause of action, see Florida Wildlife Federation, 390 So.2d at 67, had the legislature intended to provide that contract principles would govern exclusively the resolution and recovery of economic damage claims brought under the FDUTPA, it could easily have said so. Id.
We conclude, therefore, that the trial court erred in determining that the economic loss rule eliminated the appellants' claim brought under the FDUTPA. Accordingly, because the allegations of their complaint, when accepted as true, state a cause of action for deceptive and unfair trade practices and acts, see, e.g., Cummings v. Warren Henry Motors, Inc., 648 So.2d 1230, 1233 (Fla. 4th DCA 1995), we likewise reverse the trial court's judgment on the pleadings as to that count.
We close with the observation that because our focus in this case has necessarily been limited to the application of the economic loss rule to a consumer's contract-based claim brought under the FDUTPA with its distinct underlying public policy considerations, we need not consider whether our holding may conflict with those cases, relied on by the appellee, which apply the rule to contract-based claims brought under Florida's civil RICO and civil theft statutes, sections 772.104 and 772.11, Florida Statutes (1991). See, e.g., Ginsberg v. Lennar Florida Holdings, Inc., 645 So.2d 490, 494-495 (Fla. 3d DCA 1994) (and cases cited therein), review denied, 659 So.2d 272 (Fla.1995); accord Hoseline, Inc. v. U.S.A. Diversified Products, Inc., 40 F.3d 1198, 1200 (11th Cir.1994). But see Burke, 674 So.2d at 759 (declining "to allow the economic loss rule to abrogate a legislatively created scheme designed to extend a civil remedy to those harmed by alleged criminal activity"); accord Nerbonne, N.V. v. Lake Bryan Int'l Properties, 689 So.2d 322, 324-27 (Fla. 5th DCA 1997). Because we are of the opinion, however, that the vast majority of consumer transactions in this state are based on written sales contracts, we do determine that the economic loss rule issue we have decided in this case involves a matter of state-wide significance in the administration of the FDUTPA by Florida courts. Accordingly, we certify to the Florida Supreme Court the following question of great public importance:
HAS FLORIDA'S ECONOMIC LOSS RULE ELIMINATED A CONSUMER'S CAUSE OF ACTION FOR ECONOMIC DAMAGES BROUGHT UNDER THE SUBSTANTIVE PROVISIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, SECTIONS 501.201-501.213, FLORIDA STATUTES, WHEN THE CAUSE OF ACTION IS BASED ON A WRITTEN CONSUMER SALES CONTRACT?
We, therefore, reverse the trial court's order granting judgment on the pleadings as to counts one and two of the appellants' complaint, remand this case for further proceedings consistent with this opinion,[8] and certify a question of great public importance.
*612 Reversed and remanded for further proceedings; question certified.
PARKER, A.C.J., and NORTHCUTT, J., concur.
NOTES
[1] In Sandarac Association v. W.R. Frizzell Architects, Inc., 609 So.2d 1349, 1355 (Fla. 2d DCA 1992), review denied, 626 So.2d 207 (Fla.1993), this court expressed its disagreement with case law which "sometimes discusses the economic loss rule as a `bar' to the plaintiff's claim." We reasoned that when the rule is properly viewed within the context of negligence law, which "does not recognize a protected interest in purely economic loss," it is "[t]echnically ... incorrect" to suggest that the rule merely poses a barrier to an already existing negligence-based cause of action to recover such a loss. Id. We observed, instead, that the rule simply does not permit such an action to "exist [] under such circumstances." Id. (emphasis added). But see HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1240 (Fla.1996) (concluding that cause of action for fraud in the inducement "is not barred by the economic loss rule") (emphasis added).
[2] A.R. Moyer, Inc. v. Graham, 285 So.2d 397, 402 (Fla.1973) (holding, in response to certified question, "that a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity"), explained in AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180, 181 (Fla.1987) (explaining that basis of decision in Moyer was "the fact that the supervisory responsibilities vested in the architect carried with it a concurrent duty not to injure foreseeable parties not beneficiaries of the contract"), limited by Casa Clara Condominium Ass'n v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1248 n. 9 (Fla.1993) (limiting Moyer "strictly to its facts").
[3] We note, in that regard, that the Florida Supreme Court declared section 501.204, which forms the substantive basis of the appellants' deceptive act claim against the appellee, to be constitutional in Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla.1976). Moreover, the appellee has not advanced a constitutional challenge to the FDUTPA.
[4] Section 672.106(1) is found in that part of Florida's Uniform Commercial Code which governs transactions involving sales of goods.
[5] Section 686.402(14) is found in sections 686.40-686.418, Florida Statutes (1995), known as the "Farm Equipment Manufacturers and Dealers Act," which had an effective date of July 1, 1984. Ch. 84-217, § 19, at 719, Laws of Fla. This act shares a similar legislative public policy goal with the FDUTPA in that it is designed "to prevent fraud, unfair business practices, unfair methods of competition, imposition, and other abuses upon" the citizens of this state, section 686.401(1), and is to "be liberally construed" "to promote" these "policies." § 686.401(2).
[6] See Green v. State, 604 So.2d 471, 473 (Fla. 1992) (using Merriam Webster's Third New International Dictionary (1986) to define a statutorily undefined term).
[7] The Florida Supreme Court has defined an economic loss to include the diminution in value of a product. See Casa Clara, 620 So.2d at 1246. As previously noted, this is the same measure of damages under the FDUTPA. See Urling v. Helms Exterminators, Inc., 468 So.2d 451, 454 (Fla. 1st DCA 1985); Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984), review denied, 461 So.2d 114 (Fla.1985).
[8] Such proceedings may include reconsideration of the appellants' motion to add a claim for punitive damages which the trial court denied solely on the basis of the economic loss rule.