CANADY, J.,
dissenting.
For many years, this Court has recognized the vital role of the • economic loss rule in maintaining the boundary between tort law and contract law. With today’s decision, the majority repudiates our case law and sets a new course for the expansion of tort law at the expense of contract law. I agree with Chief Justice Polston’s view that “Florida’s contract law is seriously undermined by this decision,” dissenting op. at 1267 (Polston, C.J.), and I accordingly dissent.
Just two years ago, in Curd v. Mosaic Fertilizer, LLC, 39 So.3d 1216, 1223 (Fla.2010), the same majority that decides today’s ease joined in an opinion stating the general principle that “the economic loss rule in Florida is applicable” not only in the products liability context but also “where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract.” The majority in Curd simply restated Florida law.
In Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla.2004), we explained that the general “prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort.” We recognized the rationale for the economic loss rule:
Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process. A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made. Thus, when the parties are in privity, contract principles are generally more appropriate for deterihining remedies for consequential damages that the parties have, or could have, addressed ’ through their contractual agreement. Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart . from a breach of contract.
Id. at 536-37.
The holding in American Aviation was based on the negative answer to this Court’s rephrased certified question: “Whether the economic loss doctrine bars a negligence action to recover purely economic loss in a case where the defendant is neither a manufacturer nor distributor of a product and there is no privity of contract”. Id. at 534 (emphasis added). By rephrasing the certified question in this manner, this Court emphasized the significance of the existence of privity of contract in determining whether the economic loss rule should be applied to bar a negligence action. This Court held as follows: “Because the defendant in this case is neither *1268 a manufacturer nor distributor of a product, and the parties are not in privity of contract, this negligence action is not barred by the economic loss rule.” Id. (emphasis added).
Both Curd and American Aviation merely rearticulated the point we had made earlier in Casa Clara Condominium Ass’n, Inc. v. Charley Toppino & Sons, Inc., 620 So.2d 1244, 1246 (Fla.1993), concerning the boundary between tort law and contract law:
[Ejconomic losses are disappointed economic expectations, which are protected by contract law, rather than tort law. This is the basic difference between contract law, which protects expectations, and tort law, which is determined by the duty owed to an injured party. For recovery in tort there must be a showing of harm above and beyond disappointed expectations. A buyer’s desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects.
(Citations omitted) (internal quotation marks omitted). And Casa Clara itself echoed the reasoning of Florida Power & Light Co. v. Westinghouse Electric Corp., 510 So.2d 899 (Fla.1987), that “contract principles [are] more appropriate than tort principles for [resolving] economic loss without an accompanying physical injury or property damage.” Casa Clara, 620 So.2d at 1247 (quoting Florida Power, 510 So.2d at 902).
In Florida Power, 510 So.2d at 902, we rejected the invitation—in the products liability context—“to intrude into the parties’ allocation of risk by imposing a tort duty and corresponding cost burden on the public.” In AFM Corp. v. Southern Bell Telephone & Telegraph Co., 515 So.2d 180, 180 (Fla.1987), we then applied the reasoning of Florida Power to bar a claim for economic losses in tort by a purchaser of services where there was no claim for personal injury or property damage.
Our cases thus have repeatedly recognized the economic loss rule as a rule that prevents contract law from “drown[ing] in a sea of tort.” Casa Clara, 620 So.2d at 1247 (quoting East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)).[12] The basis for this rationale— which the Court has repeatedly elaborated—is not limited to the products liability context. The application of the economic loss rule in the context of other relationships based on contract is not “unprincipled.” Majority op. at 1261-62. The goal of preventing contract law from drowning in a sea of tort is as compelling in the broader context of contract-based relationships as it is in the product liability context. The majority articulates no explanation of why the economic loss rule is appropriately applied in the products lia *1269 bility context but is unworkable or unwise in that broader context.
The best the majority offers is some turgid and obscure dicta from Moransais v. Heathman, 744 So.2d 973 (Fla.1999), and criticism of the exceptions from the economic loss rule recognized in our case law. The fact that the economic loss rule is subject to certain recognized exceptions—exceptions that are based on specific policy considerations—does not undermine the integrity of the general rule or obliterate the purpose on which it is based. On the contrary, the exceptions are predicated on the validity of the general rule. In short, the majority has failed to justify this dramatic unsettling of Florida law.
The concurring opinion likewise fails to provide any reasoning to support the limitation on the scope of the economic loss rule imposed by today’s decision. Totally absent from the concurrence is any discussion of how the rationale we have articulated for the economic loss rule can be reconciled with limiting the operation of the rule to products liability cases. Like the majority opinion, the concurring opinion effectively dismisses the reasoning in this Court’s prior decisions as irrelevant.
The concurrence correctly recognizes that a minority of this Court has previously expressed the view concerning the limited scope of the economic loss rule that is today adopted by the Court. But a minority of the Court does not articulate the law of Florida. Nothing in those prior minority views provides a principled basis for rejecting the general application of the rationale articulated in our prior decisions.
The concurrence also relies on this Court’s statements in American Aviation concerning our holding in AFM. But the concurrence’s reliance on American Aviation to support departing from our precedent in AFM is unwarranted. I readily concede that confusion arose from this Court’s declaration that it was receding from AFM “to the extent that it relied on the principles adopted” in Westinghouse Electric. Am. Aviation, 891 So.2d at 542. This statement is problematic for two salient reasons.
First, and most important, American Aviation itself predicated its holding and its formulation of the rephrased certified question on the significance of the existence of privity of contract. At the outset of the opinion, this Court stated: “We conclude that the ‘economic loss doctrine’
... bars a negligence action to recover solely economic damages only in circumstances where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies.” 891 So.2d at 534 (emphasis added). To the extent that the subsequent statement concerning AFM is understood to suggest a repudiation of the “contractual privity economic loss rule,” 891 So.2d at 537, the majority’s opinion in American Aviation is self-repudiating and irredeemably incoherent.
Second, as the concurrence correctly observes, the facts in American Aviation did not involve a contractual relationship between the parties. Accordingly, American Aviation did not present a proper occasion for the Court to repudiate a prior holding, such as AFM, that specifically addressed the application of the economic loss rule to facts based on the existence of a contractual relationship. If the statement in American Aviation concerning AFM is anything, it is dicta.
With today’s decision, we face the prospect of every breach of contract claim being accompanied by a tort claim. I strongly dissent from this decision. Based on the precedents explained in Chief Justice *1270 Polston’s dissent, I would conclude that an insurance broker does not provide a professional service and thus is not precluded from asserting the economic loss rule as a bar to tort claims. I therefore would answer the certified question in the negative.
Mark L. McAlpine of McAlpine & Associates, P.C., Auburn Hills, Michigan, for Appellant.
Mitchell J. Auslander and Christopher J. St. Jeanos of Willkie, Farr & Gallagher, LLP, New York, New York, for Appellees.
POLSTON, C.J., concurs.
Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit—Case No. 09-11718-GG

. The Restatement (Third) of Torts: Liability for Economic Harm (Tentative Draft No. 1) § 3 (April 4, 2012) states the general rule that "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties.” The comments explaining this rule observe that "[i]f two parties have a contract, the argument for limiting tort claims between them is most powerful.” Id. at cmt. a. The comments explain the rationale for the rule:
When a dispute arises, the rule protects the bargain the parties have made against dis-
ruption by a tort suit. Seen from an earlier point in the life of a transaction, tire rule allows parties to make dependable allocations of financial risk without fear that tort law will be used to undo them later. Viewed in the long run, the rule prevents the erosion of contract doctrines by the use of tort law to work around them. The rule also reduces the confusion that can result when a party brings suit on the same facts under contract and tort theories that are largely redundant in practical effect.
Id. at cmt. b.